ORIGINAL

ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
JUN - 4 2007
U.S. COURT OF FEDERAL CLAIMS

**ESSEX ELECTRO ENGINEERS, INC.,**
2015 Mitchell Boulevard
Schaumburg, IL 60193
(847)891-4444

Plaintiff,

v.

**THE UNITED STATES,**

Defendant.

No. 07-348 C

## COMPLAINT

## I. THE PARTIES

1. Plaintiff, Essex Electro Engineers, Inc. ("Essex"), is a small business concern incorporated in the State of Illinois with its principal and only place of business located at 2015 Mitchell Boulevard, Schaumburg, Illinois 60193.

2. Essex has more than 40 years of experience in the design and manufacture of thousands of diesel, gasoline, and gas turbine driven engine generator sets and other types of ground support equipment under fixed price contracts with the United States Government.

3. Defendant, the United States, at all times pertinent hereto, operated through its Department of the Air Force, Sacramento Air Logistics Command, McClellan Air Force Base, California, subsequently, Warner Robins Air Logistics Command, Robins Air Force Base, Georgia, and, at times, the Defense Logistics Agency [hereinafter may be referred to as the "Agency", "DCMA", "DCMC", or "DCAS"] and the Defense Finance and

Accounting Service [hereinafter referred to as "DFAS"].

JURISDICTION

4. Jurisdiction is conferred on the Court by the Tucker Act, 41 U.S.C. §§1491(a)(1) through (3), and by the Contract Disputes Act, 41 U.S.C. §601, et seq. ("CDA"), as implemented by the "Disputes" Clause, Federal Acquisition Regulation ("FAR") §52.233-1.

5. More than five (5) months after Essex submitted its subject CDA Claim, the Contracting Officer has not resolved or issued a final decision in this matter.

FACTS

6. Contract No. F04606-94-D-0401 ["Contract-0401"] was awarded to Essex on September 30, 1994. The Contract was a 100% small business set aside. The Contract, as awarded, was a fixed price indefinite quantity contract with an original completion date of August 24, 1997, for production of 72 KW commercial Generator Sets, Essex's Model No. B809.

7. Order No. 0001 was issued September 30, 1994, for 106 units[1] at a price of $2,652,800. Order No. 0002 was issued November 15, 1994, for 224 units at a price of $5,455,600. Order No. 0003 was issued May 7, 1996, for 63 units at a price of $2,072,700.

8. On April 4, 1996, the Contracting Officer issued Contract Modification "P00004" (sic: P00002) for signature to add a new engine to meet 1997 EPA requirements and other design changes; adjusted the price for the cost of incorporating the changes; and, further, included a new schedule time line that recognized a 537 day delay to the

---

[1]After a no cost termination of 4 units for convenience.

original date for First Article approval.

9. On April 9, 1996, Essex signed and returned Contract Modification P00002 "subject to a reservation of our rights to recover all increased costs that may have accrued or be experienced as a consequence of performance delays that have occurred, which may include escalation in prices."

10. Contract Modification P00002 was signed and returned to Essex by the Contracting Officer on April 16, 1996.

11. On December 31, 1996, the Contracting Officer issued Contract Modification P00003 for signature to incorporate two class I Engineering Changes issued by the Air Force, ECP Nos. 0401-02 (November 13, 1996) and 0401-03 (November 25, 1996) and adjusted the price for the cost of incorporating the changes.

12. On January 3, 1997, Essex signed and returned Contract Modification P00003 subject to "a reservation of our rights to recover all increased costs that may have accrued or be experienced as a consequence of performance delays that have or will occur, which may include escalation in prices."

13. The Contracting Officer then signed Modification P00003 on January 8, 1997.

14. As had been reserved in its signing of prior modifications, on April 29, 1998, Essex submitted its claim for material escalation as a consequence of the Government delays. Essex noted that the submission was without prejudice to its right to further equitable adjustments for increased burden costs due to the Government delays, disruptions and performance extensions that had occurred or may occur in the future.

15. On January 11, 2000, by Modifications 000108, 000206, and 000303 to Orders 0001, 0002, and 0003, the Government provided the price adjustment of

$558,369.01 to Essex for its material escalation due to "Government caused delay" subject to Essex's reservation of its rights to increased burden costs due to the Government delays and disruptions to performance.

16. By subsequent Modifications 000109, 000111, 000112, 000207, 000305 and 000306, the Government provided CDA interest from the claim date to payment on the material escalation "for Government caused delay."

17. As had been reserved in its signing of prior modifications, on May 25, 2000, Essex submitted its Contract Disputes Act claim for Government caused delays, disruptions and interruptions.

18. Essex completed all production deliveries in January, 2002.

19. The Government informed Essex that it was unable to initiate efforts to resolve Essex's pending CDA claim because of time constraints and unavailable personnel resulting from procurement activities for the hostilities in Afghanistan and preparation for and conduct of the war in Iraq so that in spite of repeated inquiries by Essex, as of April, 2006, no meeting, negotiations, or resolution had occurred with respect to the claim.

20. At no time did the Government dispute Essex's entitlement to a price adjustment for the damages caused by the Government delays, disruptions, and interruptions to performance and completion of the Contract.

21. A telephone conference was arranged and on May 18, 2006, Essex and the Government agreed to a final contract settlement of $1,164,832.00 as the amount due on Essex pending CDA claim.

22. Contract Modification P00007 was fully executed on July 17, 2006, referenced the Contract Disputes Clause FAR 52.233-1, and funded the contract

settlement with a requirement that DFAS should make the payment AS SOON AS POSSIBLE. Modification P00007 specifically changed the Contract Schedule B for Supplies or Services by adding Contract Line Item ["CLIN"] 0009 for $1,164,832.00 for "unabsorbed overhead due to Government caused delay" and CLIN 0010 for $343,275.99 in Interest "through Date of Settlement (18 May 2006).

23. On July 17, 2006, the Contracting Officer issued Order for Supplies or Services No. 0004 for the same CLINs 0009 and 0010. The Order also reiterated the requirement that DFAS MUST pay the amount AS SOON AS POSSIBLE after receipt of contractor's invoice.

24. Accelerated methods for payment as quickly as possible by DFAS are specifically recognized for Small Business concerns, as here [5 CFR 1315.5(b)], and under unique circumstances [FAR 32.903-1(a)(3) & (5)]. [See also, FAR 32.906-1(a)(1)].

25. As a result of having included "F04606-**04**-D-0401" in the Contract No. block in Modification P00007 [Order 0004 recited the correct Number F04606-94-D-0401], the Contracting Officer unilaterally issued Modification P00008 on July 18, 2006, correcting the "04" to "94".

26. Also on July 18, 2006, apparently because Order 00004 incorrectly referred to "HQ0338" as the DFAS-Columbus Center payment office, the Contracting Officer unilaterally issued Modification 01 to Order 00004 to refer to "HQ0339" as the DFAS-Columbus Center payment office and identified "Dave.Merz@dfas.mil" as the point of contact.

27. Essex's Invoice for the payment due for CLINs 0009 and 0010 was dated

July, 17, 2006, and enclosed Contract Modifications P00007 and P00008 and Order 00004.

28. Essex's Invoice was recorded by MOCAS [the DFAS electronic payment tracking program] with a Payment Due date of July 26, 2006.

29. After no payment was received, no less than 30 e-mail communications were sent to Mr. Merz and other DFAS personnel to whom Essex was directed. Notwithstanding these communications that reiterated the accelerated payment requirements in Modification P00007 and Order 00004 and the FAR provisions that made payment by DFAS possible as soon as 7 days after receipt of the Invoice, the payment of the final settlement Invoice for CLINs 0009 and 0010 was not received by Essex until August 30, 2006.

30. Mr. Merz had disavowed any responsibility as a DFAS contact or as a DFAS representative for communicating with "contractors."

31. Based on the MOCAS due date of July 26, 2006 [8 days after the Invoice], under the 30 day Prompt Payment compounding provisions of FAR 32.907 and 5 CFR §1315.10, Late Payment Interest was automatically due on the total principal payment date for CLIN 0009 and 0010, as follows:

| | | |
|---|---|---|
| 7/26 – 8/25/2006: | $1,508,107.99 x 0.0575 / 360 x 30 days: | $ 7,226.35 |
| 8/26 – 8/30/2006: | $1,508,107.99 | |
| | 7,226.35 | |
| | $1,515,334.34 x 0.0575 / 360 x 5 days: | 1,210.16 |
| | | $ 8,436.51 |

32. After waiting ten days, on September 11, 2006, Essex submitted its written request/demand under FAR 32.907-1(c)(1), for the late payment interest penalty required

to have been automatically paid on August 30, 2006, under FAR 32.907-1(a), and for the additional penalty amount of $5,000.00 under FAR 32.907-1(c) because of the failure to pay the late payment interest penalty within ten days.

33. A Mr. Dennis Gaither was ultimately identified by DFAS as its contact person. He refused payment of the late payment interest penalty and the additional penalty alleging that "guidelines" prohibited such payments on Essex's Invoice which he alleged was a Contract Disputes Act Claim.

34. Mr. Gaither's e-mail of October 2, 2006, did not respond to the requested identification of the alleged "guidelines" in Essex's e-mail of September 29, 2006, nor did it provide any basis for the DFAS failure to comply with the Prompt Payment Act requiring the automatic payment of the late payment interest penalty and the additional penalty amount. [See, FAR 32.907-1(a) & (c)].

35. Contrary to Mr. Gaither's assertions, the Contract Disputes Act [See, FAR 52.333-1(c)] explicitly provides that a voucher or invoice that is not in dispute when submitted is not a claim under the Act.

36. Under 5 CFR 1315.1, the Prompt Payment Act is applicable to all **Procurement Contracts** except only Tennessee Valley Authority contracts under 31 U.S.C. Chapt. 39, including all "**Vendor Payments**" due those defined as contractors or vendors under Sect. 1315.2(hh), except contract financing payments and emergency payments.

37. Late Payment Interest accrues daily and is compounded every 30 days at the Renegotiation Board Interest Rate until paid [FAR 32.907-1(d). 5 CFR 1315.10(a)(4) & (5)

specifically provide that, when the interest penalty is not paid, "interest will accrue on the unpaid amount until paid" except "after filing a claim for **such penalties**" under the CDA or after "more than one year."

38. On December 29, 2006, Essex submitted its CDA claim to the assigned Contracting Officer for the Prompt Payment late payment interest penalty and additional penalty for nonpayment after Essex's request/demand of September 11, 2006.

39. Under the compounding terms of 5CFR 1315.10(a)(3), the continuing interest is as follows as of December 29, 2006:

| | | |
|---|---|---|
| LATE PAYMENT INTEREST DUE A/O 08/30/06: | $ 8,436.51 | $ 8,436.51 |
| 08/30/06 – 9/29/06: 8,436.51 x 0.0575 / 360 x 30 days: | 40.42 | 40.42 |
| | $ 8,476.93 | |
| 09/30/06 – 10/30/06: 8,476.93 x 0.0575 / 360 x 30 day: | 40.62 | 40.62 |
| | $ 8,517.55 | |
| 10/30/06 – 11/29/06: 8,517.55 x 0.0575 / 360 x 30 day: | 40.81 | 40.81 |
| | $ 8,558.36 | |
| 11/30/06 – 12/29/06: 8,558.36 x 0.0575 / 360 x 29 day: | 39.64 | 39.64 |
| TOTAL LATE PAYMENT INTEREST DUE A/O 12/31/06: | | $ 8,599.37 |

40. Adding the maximum $5,000.00 Additional Penalty under FAR 32.907-1(c ), results in an amount due of $13,599.37.

41. Essex is defined as a contractor or vendor [See, 5 CFR 1315.2(j) & (hh)]. None of the 5 CFR 1315.1 exceptions to the PPA are applicable here. Further, the Prompt Payment Act is directly applicable to a "final invoice" for "contract settlement actions" [FAR 32.904-1(b) and FAR 32.907-1(a)(3)].

42. The CDA claim in the total amount of $13,599.37 ends the accruing PPA late payment interest penalty. The CDA amount due then accrues interest at the Renegotiation Board Rate in effect for December 30, 2006, and, then, January 1, 2007, and then as adjusted each six months thereafter until paid.

43. Essex's claim advised the Contracting Officer that any denial of the claim would have no reasonable or rational basis under the applicable regulations and, as a small business concern, Essex would be due all fees and costs resulting from an appeal to a Board or Court made necessary by such a denial, in addition to the accruing CDA interest until payment is made.

**COUNT I**

44. Essex repeats and realleges each and every allegation set forth in paragraphs 1 through 43, above.

45 Essex is entitled to $13,599.37, together with interest on that amount at the Renegotiation Board Rate in effect for December 30, 2006, and, then, January 1, 2007, and then as adjusted each six months thereafter until paid.

**COUNT II**

46. In the alternative to Count I, Essex repeats and realleges each and every allegation set forth in paragraphs 1 through 43, above.

47. On May 17, 2007, a subsequent Contracting Officer informed Essex that, "[a]fter discussions with legal counsel, the Government's position is that interest is not payable under the Prompt Payment Act (PPA)."

48. Under the CDA, interest at the Renegotiation Board Rate in effect on the date

of a CDA claim and as adjusted each six months thereafter is required to be paid until the amount found due the contractor on the claim is paid.

49. The sum of $1,164,832.00 was found due Essex on its CDA claim of May 25, 2000, and interest was acknowledged through May 18, 2006, and the amount due with interest through May 18, 2006, was ultimately paid on August 30, 2006.

50. In the alternative to the Prompt Payment interest penalty and additional penalty under Count I, Essex is entitled to be paid interest at the Renegotiation Board rate on $1,164,832.00 for the period from May 18, 2006, through August 30, 2006, in the amount of $18,226.43, as follows:

| | |
|---|---|
| $1,164,832 x 0.05125 / 365 x 43 = | $ 7,032,87 |
| $1,164,832 x 0.0575 / 365 x 61 = | 11,193.56 |
| | $18,226.43 |

**COUNT III**

51. In addition to Counts I and II, Essex repeats and realleges each and every allegation set forth in paragraphs 1 through 50, above.

52. From and after May 18, 2006, Essex and its counsel made diligent efforts to resolve the subject matter of this Complaint.

53. At no time until May 17, 2007, did a Government Contracting Officer dispute Essex's entitlement to the interest penalties claimed.

54. Essex is entitled to its fees and costs, totaling $21,085.00, incurred in its efforts to settle this matter before May 17, 2007.

WHEREFORE, for all the foregoing, Essex hereby demands judgment as follows:

A. Under Count I, the sum of $13,599.37.

B. Under Count II, in the alternative to Count I, the sum of $18,226.43.

C. Under Count III, in the addition to Counts I and II, the sum of $21,085.00.

D. As to all Counts, interest under the CDA from December 29, 2006, to payment, fees, costs and such other and further relief as the Court deems just, proper and equitable.

Date: May 29, 2007

Respectfully submitted,

Charles E. Raley
54 Governors Road
Hilton Head Island, SC 29928
(843)363-6634
FAX: (843)363-6635
e-mail: craley@islc.net

Counsel for Plaintiff,
Essex Electro Engineers, Inc.