**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ESSEX ELECTRO ENGINEERS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 07-348 C |
| | ) | (Judge E. Bruggink) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS AND**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, the United States, respectfully requests the Court to dismiss Count I of plaintiff's Complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). In the alternative, we respectfully request that the Court grant summary judgment to the United States on Count I of the Complaint, pursuant to RCFC 56. Finally, we respectfully request, also pursuant to RCFC 56, that the Court grant summary judgment to the United States on Count II of plaintiff's Complaint. In support of our motions, we rely upon plaintiff's Complaint, our brief, and the attached exhibit.

**DEFENDANT'S BRIEF**

**QUESTIONS PRESENTED**

1. Whether Count I of plaintiff's Complaint fails to state a claim upon which relief can be granted because the Prompt Payment Act applies only to delivered property or services, and not to a settlement payment for unabsorbed overhead. In the alternative, whether the United States is entitled to summary judgment on Count I of the Complaint because the

terms of an applicable settlement agreement preclude plaintiff's claim for additional interest.

2. Whether the United States is entitled to summary judgment on Count II of plaintiff's Complaint because the terms of an applicable settlement agreement preclude plaintiff's claim for additional interest under the Contract Disputes Act.

3. Whether the Government had 30 days to pay plaintiff's invoice for a settlement payment, even assuming, arguendo, that plaintiff's Complaint states a claim under the Prompt Payment Act that is not barred by the applicable settlement agreement.

## STATEMENT OF THE CASE

Relying on either the Prompt Payment Act ("PPA"), see Compl. ¶¶ 44-45 ("Count I"), or the Contract Disputes Act ("CDA"), see Compl. ¶¶ 46-50 ("Count II"), plaintiff seeks additional interest on an allegedly late settlement payment the Government made pursuant to a settlement agreement to resolve a contract dispute. Count of plaintiff's Complaint, however, fails to state a claim with respect to the PPA because that statute applies only to delivered property or services, and not to settlement payments (in this case, for "unabsorbed overhead"). In any event, the settlement agreement itself bars plaintiff's claim for additional interest, whether asserted under the PPA (Count I) or the CDA (Count II).

### I. Statement Of Facts[1]

On September 30, 1994, the United States Department of the Air Force awarded Contract No. F04606-94-D-0401 (the "Contract") to plaintiff Essex Electro Engineers, Inc. ("Essex") to produce generator sets. See Compl. at ¶ 6. The Contract was a fixed price, indefinite quantity type contract, and had an original completion date of August 24, 1997. Id. Between September

1 We treat the facts alleged in plaintiff's Complaint as true solely for the purpose of our instant motion. See Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995).

30, 1994 and May 7, 1996, the Government purchased generator sets totaling more than $10 million from Essex Electro pursuant to the Contract. Id. at ¶ 7.

On April 4, 1996 and December 31, 1996, the contracting officer issued modifications to add new contract requirements and to adjust, accordingly, the contract price and original date for First Article approval. See Compl. at ¶¶ 8, 11. Essex Electro signed and returned both modifications subject to a reservation of rights "to recover all increased costs that may have accrued or be experienced as a consequence of performance delays." Id. at ¶¶ 9, 12.

On April 29, 1998, Essex submitted its first CDA claim for "material escalation as a consequence of the Government delays." Compl. at ¶ 14. In response to Essex's claim, the Government issued a number of modifications providing Essex with $558,369.01, in addition to CDA interest from the claim date to payment. Id. at ¶¶ 15-16. On May 5, 2000, Essex submitted a second CDA claim, this time for alleged "Government caused delays, disruptions, and interruptions." Id. at ¶ 17.

The Government and Essex settled the second CDA claim, on July17, 2006, via Contract Modification P00007 (the "Settlement Agreement") (attached hereto as Exhibit A). See Compl. at ¶ 21-22. Pursuant to the Settlement Agreement, the Government paid Essex a total of $1,508,107.99. See Exhibit A at 2; Compl. at ¶ 22. In particular, the Government paid Essex $1,164,832.00 for "[s]ettlement of [Essex's] claim for unabsorbed overhead due to Government caused delay" (CLIN 0009) and $343,275.99 for "[i]nterest on [the] settlement amount [f]rom date of certification of Claim (26 Jun 2000) through [d]ate of settlement (18 May 2006)" (CLIN 0010). Id.

As part of the Settlement Agreement, Essex agreed to a broad release of all possible claims related to the Contract:

> In consideration of the modification agreed to herein as a complete settlement of the Contractor's claim dated 25 May 2000 and certified 26 Jun 2000, the Contractor hereby releases the Government from any and all liability under this contract for further equitable adjustments or claims attributable to the facts or circumstances giving rise to the claim.

See Exhibit A at 2 (emphasis added). The Contract Modification did provide that "payment should be made AS SOON AS POSSIBLE," but did not incorporate any statute or regulation relating to the Prompt Payment Act, or any other provision regarding interest penalties. Id. Essex received the total Settlement Agreement payment on August 30, 2006. Compl. at ¶ 29.

Notwithstanding Essex's broad release of claims, Essex now avers that Prompt Payment Act interest began accruing on the total settlement amount (i.e., $1,508,107.99) on July 26, 2006, eight days after Essex submitted its invoice for the settlement payment. See Compl. at ¶¶ 27, 31, 38 (alleging that "[o]n December 29, 2006, Essex submitted its CDA claim . . . for the Prompt Payment [Act] late payment interested penalty and additional penalty for nonpayment after Essex's request/demand of September 11, 2006"); see also Compl. at Count I (¶¶ 44-45). In the alternative, Essex seeks CDA interest on the principle amount provided in CLIN 0009 of the Settlement Agreement. See Compl. at Count II (¶¶ 46-50). Finally, Essex asks for its "fees and costs . . . incurred in its efforts to settle this matter." See Compl. at Count III (¶¶ 51-54).

## II. Argument

Notwithstanding binding Federal Circuit precedent precluding Essex's claim under the PPA, and despite Essex's broad release of claims as part of the Settlement Agreement, Essex now asserts that it is entitled to even more taxpayer money, on top of the approximately $1.5 million settlement, including interest, the Government already has paid to plaintiff. As explained in more detail below, however, Count I of plaintiff's Complaint fails to state a claim under the PPA, and thus should be dismissed pursuant to RCFC 12(b)(6). Moreover, the plain language of

the Settlement Agreement bars plaintiff's claims for additional interest, whether asserted under the PPA or the CDA. Thus, the Government is entitled to summary judgment with respect to both Count I – if it indeed should survive our motion to dismiss – and Count II of plaintiff's Complaint. Finally, even if the PPA does apply here, and even if the Settlement Agreement does not bar plaintiff's claims, the Government was not required to pay plaintiff on July 26, 2006 as plaintiff asserts.

**A. The Prompt Payment Act Does Not Entitle Plaintiff To Additional Interest.**

RCFC 12(b)(6) "authorizes dismissal of a complaint if, assuming the truth of all allegations, the complaint fails to state a claim upon which relief may be granted as a matter of law." Gavin v. United States, 47 Fed. Cl. 486, 489 (2000). In this case, Count I of Essex's Complaint is predicated entirely on the Prompt Payment Act ("PPA"), which provides that:

> the head of an agency acquiring property or service from a business concern, who does not pay the concern for each complete delivered item of property or service by the required payment date, shall pay an interest penalty to the concern on the amount of the payment due.

31 U.S.C. § 3902(a) (emphasis added).

As explained below, plaintiff cannot collect additional interest under the PPA, even construing all of the facts in Essex's Complaint in a light most favorable to Essex. First, "[i]t is well settled that the United States cannot be charged with interest, except where liability therefor is clearly imposed by statute or assumed by contract." New York Guardian Mortgagee Corp. v. United States, 916 F.2d 1558, 1560 (Fed. Cir. 1990) (holding that the "PPA covers only the acquisition of goods and services" and citing Smyth v. United States, 302 U.S. 329, 353 (1937); United States v. Mescalero Apache Tribe, 518 F.2d 1309, 1314-15 (1975), cert. denied, 425 U.S. 911 (1976)). "Thus, in interpreting the [PPA], this court may not enlarge the waiver of sovereign

immunity beyond what the language of the Act requires." FDL Techs., Inc. v. United States, 967 F.2d 1578, 1581 (Fed. Cir. 1992) (citing Library of Congress v. Shaw, 478 U.S. 310, 318 (1986)). Here, however, Essex does not allege that it was owed a debt for "property or service[s]," as required by the PPA.

Second, the Federal Circuit's holding in FDL Technologies disposes of plaintiff's claim here. In that case, FDL argued that it was entitled to interest on an attorney fee award "because it was made by means of [a] [c]ontract [m]odification" and "hence, it was reduced to a contract debt." 967 F.2d at 1581. The Federal Circuit, however, rejected FDL's contention, explaining that the PPA "provides for interest only on amounts due for property or service delivered to the head of an agency." Id. Because "the amount owed by the Army [in that case] was for attorney fees incurred by FDL, not for property or service . . .," the Federal Circuit concluded that even if it were to "view the fee award as a contract, the Claims Court correctly determined that the Army's obligation under the contract did not arise from delivery of property or services." Id. at 1581-82. Accordingly, FDL was "not entitled under the [PPA] to interest on the attorney fee award." Id. at 1582.

This Court likewise has rejected a claim for PPA interest on a settlement payment based on the FDL rationale. See Gutz v. United States, 45 Fed. Cl. 291 (1999). In Gutz, this Court found that the Government breached a settlement agreement when it failed to pay plaintiffs a certain sum of money. Id. at 298. Although plaintiffs claimed interest on that sum under the PPA, the Court held that "because the head of agency was not acquiring property or services from plaintiffs, section 3902(a) of the Prompt Payment Act . . . does not apply." Id. at 299 (citing FDL Techs, 967 F.2d at 1581-82, and explaining that "plaintiffs are not entitled to recover

interest . . . in the absence of language in the settlement agreement expressly providing for payment of interest").

Essex's claim is no different from, and should fare no better than, the rejected interest claim addressed in the FDL and Gutz decisions. In this case, Essex's PPA claim is based on an allegedly late settlement payment "for unabsorbed overhead due to Government caused delay" and related interest already paid. See Compl. at ¶ 22. But, Essex does not allege – as it must, to assert a proper PPA claim – that the Government made any late payments for an "item of property or service." 31 U.S.C. § 3902(a); 967 F.2d at 1581-82. Accordingly, Count I of Essex's Complaint must be dismissed for failure to state a claim under the PPA.

**B. The Settlement Agreement Precludes Essex's Claim for Additional Interest Under Both the Prompt Payment Act and the Contract Disputes Act.**

As part of the Settlement Agreement at issue here, see Exhibit A, Essex relinquished the very claims that it now asserts before this Court. Because the plain language of that agreement is not in dispute, and because the claims release contained therein covers Essex's claims for additional interest, the Government is entitled to judgment as a matter of law.

**1. Summary Judgment Is Appropriate Because There Is No Dispute Regarding the Terms of the Settlement Agreement At Issue In This Case.**

Summary judgment should be granted where, as here, there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987); Ralph Larson & Son, Inc. v. United States, 17 Cl. Ct. 39, 42 (1989). Indeed, disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. Doe v. United States, 48 Fed. Cl. 495, 499 (2000) (citing Anderson, 477 U.S. at 247-48; Lane Bryant, Inc. v. United States, 35 F.3d

1570 (Fed. Cir.1994)). Thus, while summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party," see id. (quoting Anderson, 477 U.S. at 248), summary judgment is appropriate when the sole dispute concerns the interpretation of a Government contract, a question of law. Id. at 499-500 (citing Olympus Corp. v. United States, 98 F.3d 1314, 1316 (Fed. Cir. 1996)).

In this case, where there is no dispute regarding the terms of the Settlement Agreement, the Government is entitled to judgment as matter of law. See King v. Department of the Navy, 130 F.3d 1031, 1033 (Fed. Cir. 1997) ("The interpretation of a settlement agreement is an issue of law."); see also Info. Sys. and Networks Corp. v. United States, 68 Fed. Cl. 336 (2005) (granting defendant's motion for summary judgment based on settlement agreement and explaining that "[c]ontract interpretation is . . . suited to resolution by summary judgment").

**2. The United States Is Entitled To Summary Judgment Based Upon the Plain Language of the Settlement Agreement.**

As noted above, the Settlement Agreement at issue in this case provided:

> In consideration of the modification agreed to herein as a complete settlement of the Contractor's claim dated 25 May 2000 and certified 26 Jun 2000, the Contractor hereby releases the Government from any and all liability under this contract for further equitable adjustments or claims attributable to the facts or circumstances giving rise to the claim.

See Exhibit A at 2 (emphasis added). While the Settlement Agreement noted that "payment should be made AS SOON AS POSSIBLE," it incorporated no statute or regulation relating to the Prompt Payment Act, nor any other provision regarding additional interest penalties. Id. Moreover, the agreement specifically indicated it was "for the purpose of settlement of the contractor's Request for Equitable Adjustment . . . and for interest accrued from date of certification through date of settlement." Exhibit A at 1 (emphasis added); see also id. at 2

(providing for payment of $343,275.99 for "Interest on settlement From date of certification of Claim . . . through Date of settlement"). Finally, the settlement unambiguously provided that the "[t]otal amount due to contractor for full and complete settlement of this claim is $1,508,107.99." Exhibit A at 2. There is no dispute that the Government has paid Essex the full settlement amount. Compl. at ¶ 29.

Essex thus gave the United States a complete release from all claims related to the contract, as part of the Settlement Agreement described above. Indeed, we note that approximately 14 paragraphs of plaintiff's Complaint concern the underlying contract dispute giving rise to the Settlement. See Compl. at ¶¶ 6-21. The Settlement Agreement covers Essex's new claims, under both the PPA and CDA, which this Court therefore must reject. See Info. Systems, 68 Fed. Cl. at 345 (quoting Gresham, Smith & Partners v. United States, 24 Cl. Ct. 796, 801 (1991), for the proposition that "'[e]xceptions to releases of claims are strictly construed against government contractors'").

Where, as here, the plaintiff has "received a settlement payment from the United States in exchange for its agreement to a broadly-worded, generalized release of its claims . . . . , the court must enforce the plain meaning of the agreement." 68 Fed. Cl. at 345-46. Like the plaintiff in Information Systems, "while [Essex] had the opportunity to refuse that agreement, or to except claims from it, it failed to do so." Id. Essex could have negotiated for the settlement payment to be made by some date certain, after which additional interest would begin to accrue; Essex's failure to do so cannot now be held against the Government. Accordingly, the Court should grant summary judgment to the United States.

**C. Even If the Prompt Payment Act Were to Apply Here, Interest Did Not Begin to Accrue on July 26, 2006.**

Under the PPA, invoices ordinarily must be paid within "30 days after a proper invoice for the amount due is received if a specific payment date is not established by contract." 31 U.S.C. § 3903(a)(1)(B).[2] Thus, even assuming the PPA applies here, and even if the Air Force received Essex's proper invoice on July 17, 2006 as alleged in Essex's Complaint, see Compl. at ¶ 27, the Defense Finance and Accounting Service ("DFAS") nonetheless had 30 days to pay the invoice (i.e., until August 16, 2006).

Notwithstanding the foregoing statutory provision, plaintiff variously alleges that DFAS was obligated to pay Essex's invoice as soon as seven or eight days after July 17, 2006. See Compl. at ¶¶ 29 ("7 days") & 31 ("8 days"). In support of that legal conclusion, Essex relies on regulatory provisions permitting "[a]ccelerated methods for payment." Id. at ¶ (citing 5 C.F.R. §1315.5(b) and various FAR provisions).

Although Essex is correct that PPA and FAR regulations authorize an agency to pay a small business concern earlier than 30 days, neither the Air Force nor DFAS have done so here. For example, 5 C.F.R. § 1315.5(b) merely provides that "[a]gencies may pay a small business as quickly as possible, when all proper documentation, including acceptance, is received in the payment office and before the payment due date." Similarly, the FAR provides that "[a]gency heads . . . [m]ay authorize the use of the accelerated payment methods specified at 5 CFR 1315.5." FAR 32.903(a)(5) (emphasis added). Neither of those provisions, however, required DFAS to pay Essex's settlement within either seven or eight days.

---

[2] See also 31 U.S.C. § 3902(a)(3)-(4) ("for the purposes of determining a payment due date and the date upon which any late payment interest penalty shall begin to accrue, the head of the agency is deemed to receive an invoice . . . [on] the date on which the place or person designated by the agency to first receive such invoice actually receives a proper invoice" (emphasis added)).

Moreover, Department of Defense regulations explicitly decline to provide PPA interest penalties, even where the agency has authorized payment in advance of the 30 day PPA payment due date. For example, DFARS 232.903 indicates that "DoD policy is to assist small disadvantaged business concerns by paying them as quickly as possible after invoices are received and before normal payment due dates established in the contract." In that regard, DFARS 232.906(a)(ii) provides that "[t]he restrictions of FAR 32.906 prohibiting early payment do not apply to invoice payments made to small disadvantaged business concerns." However, the latter DFARS clause also provides that "contractors shall not be entitled to interest penalties if the Government fails to make early payment." DFARS 232.906(a)(ii) (emphasis added). Thus, even if the Contract Modification's instruction that "payment should be made AS SOON AS POSSIBLE" were interpreted to permit payment as early as seven days following the submission of Essex's invoice, Essex would not be entitled to any PPA interest penalties.

Accordingly, even if Count I of Essex's Complaint states a claim under the PPA and is not barred by the Settlement Agreement, this Court should partially dismiss the Complaint to the extent it asserts that interest began accruing prior to August 16, 2006.

## III. Conclusion

For the foregoing reasons, plaintiff's Complaint should be dismissed, and defendant's motion for summary judgment granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

s/ Matthew H. Solomson
MATTHEW H. SOLOMSON
Trial Attorney, Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-3274
Fax: (202) 514-8624

September 26, 2007

Attorneys for Defendant

EXHIBIT A

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

1. CONTRACT ID CODE: J — Page 1 of 2

2. AMENDMENT/MODIFICATION NO.: P00007

3. EFFECTIVE DATE: July 17, 2006

4. REQUISITION/PURCHASE REQ. NO.: N/A

5. PROJECT NO (If applicable):

6. ISSUED BY — CODE: FA8517

542nd ATSG/GBTRKC
295 Byron Street
Robins AFB GA 31098-1611
Buyer: Jane Hargis
Jane.Hargis@robins.af.mi
Phone (478) 222-3780, FAX: (478)926-6950

7. ADMINISTERED BY (If other than Item 6) — CODE: S1403A

DCMA Chicago
1523 West Central Road, Bldg 203
Arlington heights IL 60005-2451
dcmachicago@dcma.mil

Payment Office: HQ0338

**SCD~B

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county,

Essex Electro Engineering Inc
2015 Mitchell Blvd
Schaumburg IL 60193-4563 US
(847) 891-4444

CODE 21260 — FACILITY CODE

9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (SEE ITEM 11)

X 10A. MODIFICATION OF CONTRACT/ORDER NO.: F04606-94-D-0401

10B. DATED (SEE ITEM 13): 30 Sep 1994

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS N/A

**$The above numbered solicitation is amended as set forth in item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended. Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods. ( a ) By completing Items 8 and 15, and returning _ copies of the amendment; ( b ) By acknowledging receipt of this amendment on each copy of the offer submitted; or ( c ) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)
See Section G

13. THIS APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS
IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

☐ A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

☐ B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO AUTHORITY OF FAR 43.103(b).

X C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:
**I-417, FAR 52.233-1, Disputes (Mar 1994)**

☐ D. OTHER (Specify type of modification and authority)

E. IMPORTANT: Contractor ☐ is not, X is required to sign this document and return _copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

The purpose of this modification is to add two line items to the basic contract for the purpose of settlement of contractor's Request for Equitable Adjustment dated 25 May 2000 and certified on 26 Jun 2000 and for interest accrued from date of certification through date of settlement..

**Note to DFAS This Modification is a settlement of a CDA claim and payment should be made AS SOON AS POSSIBLE.**

See page 2 attached.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER (Type or print)
Charles E. Raley
Counsel to Essex Electro Engineers, Inc.
[by authority in an e-mail to Ms. Hargis, 07/12/06, 4:07 p.m.]

16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)
**MARTHA R HARGIS**
**Contracting Officer**

15B. CONTRACTOR/OFFEROR
BY [signature]
(Signature of person authorized to sign)

15C. DATE SIGNED: 07/14/06

16B. UNITED STATES OF AMERICA
BY [signature]
(Signature of Contracting Officer)

16C. DATE SIGNED: 17 Jul 06

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE
30-105
STANDARD FORM 30 (REV. 10-83)
PRESCRIBED BY GSA
FAR (48 CFR) 53.243

a. Section B is changed to add CLINs 0009 and 0010 as follows:

| CLIN | DESCRIPTION | QTY/ UNIT | TOTAL |
|---|---|---|---|
| 0009 | Settlement of claim for unabsorbed overhead due to Government caused delay. | 1 lo | $1,164,832.00 |
| 0010 | Interest on settlement amount From date of certification of Claim (26 Jun 2000) through Date of settlement (18 May 2006) | 1 lo | $ 343,275.99 |

Total amount due to contractor for full and complete settlement of this claim is $1,508,107.99

b. In consideration of the modification agreed to herein as complete settlement of the Contractor's claim dated 25 May 2000 and certified 26 Jun 2000, the Contractor hereby releases the Government from any and all liability under this contract for further equitable adjustments or claims attributable to the facts or circumstances giving rise to the claim.

CERTIFICATE OF SERVICE

I hereby certify that, on this 26th day of September 2007, I caused to be filed electronically the foregoing DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT with the United States Court of Federal Claims. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Matthew H. Solomson
MATTHEW H. SOLOMSON