IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ESSEX ELECTRO ENGINEERS, INC., Plaintiff, | ) | |
| v. | ) | No. 07-348C (Judge E. Bruggink) |
| THE UNITED STATES, Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO**
**DEFENDANT'S MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT**
**AND**
**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

October 24, 2007

Charles E. Raley
Counsel for Plaintiff
54 Governors Road
Hilton Head Island, SC 29928
Tel: 843-363-6634
Fax. 843-363-6635

# TABLE OF CONTENTS

Page

I. INTRODUCTION....1

II. QUESTIONS PRESENTED....2

III. RELEVANT CONTRACT CLAUSES, STATUTES AND REGULATIONS....2

A. CONTRACT CLAUSES....3

B. STATUTES AND REGULATIONS....4

IV. DISCUSSION....12

A. Facts....13

B. Argument....15

(1) Essex Is Entitled To Summary Judgment On The "Automatic" Late Payment Penalty And Additional Penalty Under The Prompt Payment Act On Count I....15

(2) Essex Has A Statutory Right To Summary Judgment On Count II....21

(3) Defendant's Final Argument Is Disingenuous At Best....26

(4) The Professional Fees And Expenses For Services On Behalf Of Essex Seeking To Amicably Resolve Payment Of The Amount Due Are Allowable And Must Be Paid....27

V. CONCLUSION....29

# TABLE OF CITATIONS

Page

I. **CASES**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 250 (1986)........................................................................................15

*Baifield Indus., Div. Of A-T-O, Inc.*,
ASBCA ¶ 12,096, at 58,086, *recons. den.*, 76-2 BCA ¶ 12,203..............................27

*Bill Strong Enterprises, Inc. v. Shannon*,
49 F.3d 1541 (Fed.Cir. 1995),
*overruled in part on other grounds*..........................................................................27-29

*Dawco Construction, Inc. v. United States*,
930 F.2d 872 (Fed.Cir. 1991)]..................................................................................27

*FDL Technologies, Inc. v. United States*,
967 F.2d 1578 (Fed.Cir. 1992).................................................................................17-19

*Gavin v. United States*,
47 Fed.Cl. 486 (2000)................................................................................................17, n.
2

*Grumman Aerospace Corpp.*,
ASBCA No. 50090, 01-1 BCA ¶ 31,316,
*aff'd*, 34 Fed.Appx. 710 (Fed.Cir. 2003)..................................................................28

*Information Systems and Networks Corp. v. United States*,
68 Fed.Cl. 336 (2005)...............................................................................................23-24

*Johnson, Drake & Piper, Inc. v. United States*,
531 F.2d 1037 (Ct.Cl. 1976)......................................................................................23-24

*Library of Congress v. Shaw*, 478 U.S. 310 (1986).....................................................17, n.
2

*Mescalaro Apache Tribe*, *United States v.*,
518 F.2d 1309 (1975)................................................................................................17, n.
2

*Mingus Constructors, Inc. v. United States*,
812 F.2d 1387 (Fed.Cir. 1987)....................................................................15



*New York Guardian Mortgagee Corp. v. United States*,
916 F.2d 1558 (Fed.Cir. 1990)....................................................................17

*R-D Mounts, Inc.*, ASBCA No. 17422, *et al.*,
75-1 BCA ¶ 11,077, at 52,745,
recons. den., 75-1 BCA ¶ 11,237, *aff'd* 2 Cl.Ct. 320 (1983)....................................27

*Ralph Larson & Son, Inc. v. United States*,
17 Cl.Ct. 39, 42 (1989)..............................................................................15

*Reflectone Inc. v. Dalton*,
60 F.3d 1572, 1579 (Fed.Cir. 1995)...............................................................27-29

*Smyth v. United States*, 302 U.S. 329 (1937)...............................................................17, n. 2

*Stone Forest Industries, Inc. v. United States*,
973 F.2d 1548 (Fed.Cir. 1992), *reh'g den.* (1993)....................................................19-20

*Transamerica Ins. Corp. v. United States*,
973 F.2nd 1572 (Fed.Cir. 1992)....................................................................29

**II. <u>CONTRACT CLAUSES, STATUTES, AND REGULATIONS</u>**

A. CONTRACT CLAUSES

Federal Acquisition Regulation (FAR) 52.232-17 "Interest." (JAN 1991).......3, seriatim

FAR 52.232-25 "Prompt Payment." (SEP 1992)...........................................3, seriatim

FAR 52.233-1 "Disputes" (DEC 1991)..........................................................4, seriatim

FAR 52.243-1 "CHANGES — FIXED PRICE" (Aug 1987)...........................4, seriatim

B. STATUTES AND REGULATIONS

(1) 31 U.S.C. CHAPTER 39 "PROMPT PAYMENT"..............................5, seriatim

§ 3901. Definitions and application....................................................................5, seriatim

§ 3902. Interest penalties........................................................................................5, seriatim

§ 3903. Regulations...........................................................................................6, seriatim



§ 3907. Relationship to other laws..............................................................6, seriatim

(2) 41 U.S.C. §§ 601 ET SEQ. "CONTRACT DISPUTES ACT."..........7, seriatim

§ 602. Applicability of law.........................................................................7, seriatim

§ 605. Decision by contracting officer.........................................................7, seriatim

§ 611. Interest....................................................................................................7, seriatim

(3) CODE OF FEDERAL REGULATIONS, PROMPT PAYMENT, 5 CFR §1315..............................................................................................8, seriatim

.1 Application..............................................................................................8, seriatim

.2 Definitions...............................................................................................8, seriatim

.5 Accelerated Payment Methods.................................................................8, seriatim

.10 Late Payment Interest Penalties ...............................................................8, seriatim

.11 Additional Penalties... ...........................................................................9, seriatim

.16 Relationship to Other Laws ....................................................................9, seriatim

(4) FEDERAL ACQUISITION REGULATIONS [FAR]....................................9, seriatim

FAR PART 31 – CONTRACT COST PRINCIPLES AND PROCEDURES......................................................................9, seriatim

31.205-33 Professional and consultant service costs..........................................9, seriatim

FAR SUBPART 32.9 -- PROMPT PAYMENT..............................................10, seriatim

32.900 -- Scope of Subpart......................................................................10, seriatim

32.901 -- Applicability..........................................................................10, seriatim

32.903 -- Responsibilities.......................................................................10, seriatim

32.904 – Determining Payment Due Dates.........................................................10, seriatim

32.906 – Making Payments.....................................................................11, seriatim



32.907 – Interest Penalties......................................................................11, seriatim

32.908 -- Contract Clauses......................................................................11, seriatim

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ESSEX ELECTRO ENGINEERS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-348C |
| | ) | (Judge E. Bruggink) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO**
**DEFENDANT'S MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT**
**AND**
**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff, Essex Electro Engineers, Inc. [Essex], respectfully submits the following Memorandum of Points and Authorities, Proposed Findings of Uncontroverted Fact, and Appendix filed herewith in Opposition to the Defendant's Motions to Dismiss and for Summary Judgment and in support of Plaintiff's Cross-Motion for Summary Judgment. Plaintiff believes that the facts and law establish that Defendant's Motions fundamentally misapply and confuse the meaning of – (1) "underlying contract for supplies or services", which is necessary for the applicability of both the Prompt Payment Act [PPA] and the Contract Disputes Act [CDA]; (2) "final contract payment for a settlement action" under the PPA and "claim" under the CDA; and (3) "late payment penalties" and "interest", which are statutory rights on a Government supply contract under the PPA and the CDA, respectively. On the uncontroverted facts and law herein, Essex is entitled to Summary Judgment on Count I or, in the alternative Count II. Further, Essex is entitled to Summary Judgement on Count III for its administrative professional fees and expenses for efforts to amicably

resolve its statutory interest rights without litigation of a claim, which efforts the Defendant ultimately frustrated.

## II. QUESTIONS PRESENTED

A. Is the final payment on a Government contract for supplies or services due on the date required by the settlement agreement?

B. Is the PPA late payment penalty due for a failure to pay on the final payment date under a settlement of a Government contract for supplies or services?

C. Is CDA interest due on the amount found due on a claim under a Government supply

contract from the date of the proper claim to the date of payment?

D. Is the statutory right to late payment penalties under the PPA or to interest under the CDA after a final settlement barred by the settlement of a changes claim for increased costs on a Government contract for supplies or services that only "releases the Government from any and all liability under this contract for **further equitable adjustments or claims attributable to the facts or circumstances giving rise to the claim" that was dated nearly six (6) years before the settlement (emphasis supplied)**?

E. Are a contractor's costs for professional fees and expenses allowable and recoverable in efforts made to amicably resolve penalties or interest due the contractor for the late final payment on a Government supply contract during the period until the Contracting Officer refuses to address a resolution and, thus, forces the matter to be prosecuted as a claim in litigation against the Government.

## III. RELEVANT CONTRACT CLAUSES, STATUTES AND REGULATIONS

[Emphasis supplied as indicated]

### A. CONTRACT CLAUSES

**Federal Acquisition Regulation (FAR) 52.232-17 "Interest." (JAN 1991)**

(a) Notwithstanding any other clause of this contract, all amounts...that become payable by the Contractor to the Government under this contract...shall bear simple interest from the date due until paid...

(b) Amounts shall be due at the earliest of the following dates:

(3) The date the Government transmits to the Contractor a proposed supplemental agreement to confirm completed negotiations establishing the amount of debt....

**FAR 52.232-25 "Prompt Payment." (SEP 1992)**

Notwithstanding any other payment clause in this contract, the Government will make invoice payments...under the terms and conditions specified in this clause...

(a) Invoice payments...

(2) ...the due date for making invoice payments by the designated payment office shall be the later of the following two events:

(i) The 30th day after the designated billing office has received a proper invoice from the Contractor.

(ii) The 30th day after Government acceptance of supplies delivered or services performed by the Contractor. On a final invoice where the payment amount is subject to contract settlement actions, acceptance shall be deemed to have occurred on the effective date of the contract settlement....

(5) An interest penalty shall be paid automatically by the Government, without request from the contractor, if payment is not made by the due date...

(6) The interest penalty shall be the rate established by the Secretary of the Treasury under Section 12 of the Contract Disputes Act...(41 U.S.C. 611) that is in effect on the day after the due date...The interest penalty shall accrue daily on the invoice payment amount ...and be compounded in 30-day increments inclusive from the first day after the due date through the payment date. That is, interest accrued at the end of any 30-day period will be added to the approved invoice payment amount and be subject to interest penalties if not paid in the succeeding 30-day period....

(8) ...a penalty amount, calculated in accordance with regulations issued by the Office of Management and Budget, shall be paid in addition to the interest penalty amount if the Contractor —

(i) Is owed an interest penalty;

(ii) Is not paid the interest penalty within 10 days after the date the invoice amount is paid; and

(iii) Makes a written demand, not later than 40 days after the date the invoice amount is paid, that the agency pay such penalty.

**FAR 52.233-1 "Disputes" (DEC 1991)**

(a) This contract is subject to the Contract Disputes Act...(41 U.S.C. 601-613)....

(c) "Claim" as used in this clause, means a written demand or written assertion ...seeking, as a matter of right, the payment of money.... A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim under the Act....

(h) The Government shall pay interest on the amount found due and unpaid from (1) the date the Contracting Officer receives the claim (properly certified if required)...until the date of payment. Simple interest shall be paid at the rate, fixed by the Secretary of the Treasury as provided in the Act, which is applicable to the period during which the Contracting Officer receives the claim and then at the rate applicable for each 6-month period as fixed by the Treasury Secretary during the pendency of the claim.

**FAR 52.243-1 "CHANGES — FIXED PRICE" (Aug 1987)**

(a) The Contracting Officer may at any time by written order...make changes within the general scope of this contract in any one or more of the following:

> (1) Drawings, designs, or specifications when the supplies to be furnished are to be specially manufactured for the Government in accordance with the drawings, designs, or specifications....

(b) If any such change causes an increase...in the cost of, or the time required for performance...the Contracting Officer shall make an equitable adjustment in the contract price....

## B. STATUTES AND REGULATIONS

### (1) 31 U.S.C. CHAPTER 39 "PROMPT PAYMENT"

**§ 3901. Definitions and application**

(a) In this chapter—....

(3) "proper invoice" is an invoice containing or accompanied by substantiating documentation the Director of the Office of Management and Budget may require by regulation and the head of the appropriate agency may require by regulation or contract.

(4) for the purposes of determining a payment due date and the date upon which any late payment interest penalty shall begin to accrue, the head of the agency is deemed to receive an invoice —

(A) on the later of —

(i) the date on which the place or person designated by the agency to first receive such invoice actually receives a proper invoice; or

(ii) on the 7th day after the date on which, in accordance with the terms and conditions of the contract, the property is actually delivered or performance of the services is actually completed, as the case may be...

(d)(3) (A) Except as provided in subparagraph (B), an interest penalty under this chapter does not continue to accrue for more than one year or after a claim for an interest penalty is filed....

**§ 3902. Interest penalties**

(a) Under regulations prescribed under section 3903 of this title, the head of an agency acquiring property or service from a business concern, who does not pay the concern for each complete delivered item of property or service by the required payment date, shall pay an interest penalty to the concern on the amount of the payment due. The interest shall be computed at the rate of interest established by the Secretary of the Treasury, and published in the Federal Register, for interest payments under section 12 of the Contract Disputes Act of 1978 (41 U.S.C. 611), which is in effect at the time the agency accrues the obligation to pay a late payment interest penalty.

(b) The interest penalty shall be paid for the period beginning on the day after the required payment date and ending on the date on which payment is made.

(c) (1) A business concern shall be entitled to an interest penalty of $1.00 or more which is owed such business concern under this section, and such penalty shall be paid without regard to whether the business concern has requested payment of such penalty....

(3) If a business concern —

(A) is owed an interest penalty by an agency;

(B) is not paid the interest penalty in a payment made to the business concern by the agency on or after the date on which the interest penalty becomes due;

(C) is not paid the interest penalty by the agency within 10 days after the date on which such payment is made; and

(D) makes a written demand, not later than 40 days after the date on which such

payment is made, that the agency pay such a penalty, such business concern shall be entitled to an amount equal to the sum of the late payment interest penalty to which the contractor is entitled and an additional penalty equal to a percentage of such late payment interest penalty specified by regulation by the Director of the Office of Management and Budget, subject to such maximum as may be specified in such regulations...

(e) An amount of an interest penalty unpaid after any 30-day period shall be added to the principal amount of the debt, and a penalty accrues thereafter on the added amount...

**§ 3903. Regulations**

(a) The Director of the Office of Management and Budget shall prescribe regulations to carry out section 3902 of this title...

**§ 3907. Relationship to other laws**

(a) A claim for an interest penalty not paid under this chapter may be filed under section 6 of the Contract Disputes Act of 1978 (41 U.S.C. 605).

(b) (1) An interest penalty under this chapter does not continue to accrue—

(A) after a claim for a penalty is filed under the Contract Disputes Act of 1978 (41 U.S.C. 601 et seq.); or

(B) for more than one year.

(2) Paragraph (1) of this subsection does not prevent an interest penalty from accruing under section 12 of the Contract Disputes Act of 1978 (41 U.S.C. 611) after a penalty stops accruing under this chapter. A penalty accruing under section 12 may accrue on an unpaid contract payment and on the unpaid penalty under this chapter.

**(2) 41 U.S.C. §§ 601 ET SEQ. "CONTRACT DISPUTES ACT."**

**§ 602. Applicability of law**

(a) Executive agency contracts
Unless otherwise specifically provided herein, this chapter applies to any express or implied contract (including those of the nonappropriated fund activities described in sections 1346 and 1491 of title 28) entered into by an executive agency for—

(1) the procurement of property, other than real property in being;

(2) the procurement of services;

**§ 605. Decision by contracting officer**

(a) Contractor claims

All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer. Each claim by a contractor against the government relating to a contract and each claim by the government against a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim. The preceding sentence does not apply to a claim by the government against a contractor that is based on a claim by the contractor involving fraud. The contracting officer shall issue his decisions in writing, and shall mail or otherwise furnish a copy of the decision to the contractor. The decision shall state the reasons for the decision reached, and shall inform the contractor of his rights as provided in this chapter. Specific findings of fact are not required, but, if made, shall not be binding in any subsequent proceeding. The authority of this subsection shall not extend to a claim or dispute for penalties or forfeitures prescribed by statute or regulation which another Federal agency is specifically authorized to administer, settle, or determine. This section shall not authorize any agency head to settle, compromise, pay, or otherwise adjust any claim involving fraud.

**§ 611. Interest**

Interest on amounts found due contractors on claims shall be paid to the contractor from the date the contracting officer receives the claim pursuant to section 605 (a) of this title from the contractor until payment thereof. The interest provided for in this section shall be paid at the rate established by the Secretary of the Treasury pursuant to Public Law 92–41 (85 Stat. 97) for the Renegotiation Board.

**(3) CODE OF FEDERAL REGULATIONS, PROMPT PAYMENT, 5 CFR §1315**

**.1 Application.**

(a) Procurement contracts. This part applies to contracts for the procurement of goods or services awarded by:

(1) All Executive branch agencies except:

(i) The Tennessee Valley Authority, which is subject to the Prompt Payment Act..., but is not covered by this part...

(b) Vendor payments. All Executive branch vendor payments and payments to those defined

as contractors or vendors (see §1315.2(hh)) are subject to the Prompt Payment Act...

**.2 Definitions**...

(hh) *Vendor* means any person, organization, or business concern engaged in a profession, trade, or business and any not-for-profit entity operating as a vendor (including State and local governments and foreign entities and foreign governments, but excluding Federal entities).

**.5 Accelerated Payment Methods**...

(b) Small Business (as defined in FAR subpart 19.001 (48 CFR 19.001)). Agencies may pay a small business concerns as quickly as possible, when all proper documentation, including acceptance, is received in the payment office and before the payment due date. Such payments are not subject to payment restrictions stated elsewhere in this part. Vendors shall be entitled to interest penalties if invoice payments are made after the payment due date...

**.10 Late Payment Interest Penalties**

(a) *Application and Calculation.*

> (4) When an interest penalty is owed and not paid, interest will accrue on the unpaid principal and accrued interest until paid, except as described in paragraph (a)(5) of this section;
>
> (5) Interest penalties under the Prompt Payment Act will not continue to accrue:
>
> (i) After the filing of a claim for such penalties under the Contract Disputes Act of 1978 (41 U.S.C. 601 et seq.); or
>
> (ii) For more than one year.

(b) *Payment*. Agencies will meet the following requirements in paying interest penalties:

> (2) Late payment interest penalties shall be paid without regard to whether the vendor has requested payment of such penalty ...

**.11 Additional Penalties**...

(b) Maximum penalty. The additional penalty shall be equal to one hundred (100) percent of the original late payment interest penalty but must not exceed $5,000.

**.16 Relationship to Other Laws**

(a) *Contract Disputes Act of 1978 (41 U.S.C. 605).*

(1) A claim for an interest penalty (including the additional penalty for non-payment of interest...) not paid under this regulation may be filed under section 6 of the Contract Disputes Act.

(2) An interest penalty under this regulation does not continue to accrue after a claim for a penalty is filed under the Contract Disputes Act or for more than one year. Once a claim for a penalty is filed under the Contract Disputes Act interest penalties under this part will never accrue on the amounts of the claim, for any period after the date the claim was filed. This does not prevent an interest penalty from accruing under Section 13 of the Contract Disputes Act after a penalty stops accruing under this part. Such penalty may accrue on an unpaid contract payment and on the unpaid penalty under this part.

**(4) FEDERAL ACQUISITION REGULATIONS [FAR]**

**FAR PART 31 – CONTRACT COST PRINCIPLES AND PROCEDURES**

**31.205-33 Professional and consultant service costs.**

(a) *Definition*. Professional and consultant services, as used in this subpart, means those services rendered by persons who are members of a particular profession or possess a special skill and who are not officers or employees of the contractor. Examples include those services acquired by contractors or subcontractors in order to enhance their legal, economic, financial, or technical positions. Professional and consultant services are generally acquired to obtain information, advice, opinions, alternatives, conclusions, recommendations, training, or direct assistance, such as studies, analyses, evaluations, liaison with Government officials, or other forms of representation.

(b) Costs of professional and consultant services are allowable subject to this paragraph and paragraphs (c) through (f) [improper or illegal conduct; services rendered; supporting evidence] of this subsection when reasonable in relation to the services rendered and when not contingent upon recovery of the costs from the Government (but see 31.205-30 [patent costs] and 31.205-47) [false or fraudulent claims].

**FAR SUBPART 32.9 -- PROMPT PAYMENT**

**32.900 -- Scope of Subpart.**

This subpart prescribes policies, procedures, and clauses for implementing Office of Management and Budget (OMB) prompt payment regulations at 5 CFR part 1315.

**32.901 -- Applicability.**

(a) This subpart applies to invoice payments on all contracts, except contracts with payment terms and late payment penalties established by other governmental authority (*e.g.*, tariffs).

(b) This subpart does not apply to contract financing payments (see definition at 32.001).

**32.903 -- Responsibilities.**

(a) Agency heads –...

> (2) May prescribe additional standards for establishing invoice payment due dates (see 32.904) necessary to support agency programs and foster prompt payment to contractors;
>
> (3) May adopt different payment procedures in order to accommodate unique circumstances, provided that such procedures are consistent with the policies in this subpart;...
>
> (5) May authorize the use of the accelerated payment methods specified at 5 CFR 1315.5

**32.904 – Determining Payment Due Dates.**

(b) *Payment due dates.* Except as prescribed in paragraphs (c) through (f) of this section, or as authorized in 32.908(a)(2) or (c)(2), the due date for making an invoice payment is as follows:

> (1) The later of the following two events:
>
> (i) The 30th day after the designated billing office receives a proper invoice from the contractor (except as provided in paragraph (b)(3) of this section).
>
> (ii) The 30th day after Government acceptance of supplies delivered or services performed.
>
>> (A) For a final invoice, when the payment amount is subject to contract settlement actions, acceptance is deemed to occur on the effective date of the contract settlement.

**32.906 – Making Payments.**

(a) General. The Government will not make invoice payment earlier that (sic) 7 days prior to

the due dates specified in the contract unless the agency head determines--

> (1) To make earlier payment on a case-by-case basis; or
>
> (2) That the use of accelerated payment methods are necessary (see 32.903(a)(5)).

**32.907 – Interest Penalties.**

(a) Late payment. The designated payment office will pay an interest penalty automatically, without request from the contractor, when all of the following conditions, if applicable, have been met:

> (1) The designated billing officer received a proper invoice...
>
> (3) In the case of a final invoice, the payment amount is not subject to further contract settlement actions between the Government and the contractor.
>
> (4) The designated payment office paid the contractor after the due date...

(e) *Computation of interest penalties.* The Government will compute interest penalties in accordance with OMB prompt payment regulations at 5 CFR part 1315.....

**32.908 -- Contract Clauses....**

(c) Insert the clause at 52.232-25, Prompt Payment, in all other solicitations and contracts...

> (2) As provided in 32.903, agency policies and procedures may authorize amendment of paragraphs (a)(1)(i) and (ii) of the clause to insert a period shorter than 30 days (but not less than 7 days) for making contract invoice payments.

## IV. DISCUSSION

Underlying this matter is a fixed price supply Contract awarded to Essex Electro Engineers, Inc. [Essex], that includes the (1) "Prompt Payment" Clause, implementing the "automatic" late payment penalty requirements of the Prompt Payment Act [PPA], the Code of Federal Regulations [CFR], and the Federal Acquisition Regulations [FAR]; and (2) the "Changes" and "Disputes" Clauses, implementing the CDA and its mandatory interest requirement. Notwithstanding the Contract, Defendant first argues that somehow Essex is not entitled to the late payment penalties or

interest here for the Government's late final payment of the amount due Essex on the fixed price supply Contract under the final settlement.

The Defendant next argues that the subject settlement of Essex's supply Contract "claim dated 25 May 2000" bars the automatic late payment penalties under the PPA or the mandatory interest under the CDA. The settlement agreement simply and specifically released "the Government from any and all liability under this contract **FOR EQUITABLE ADJUSTMENTS OR CLAIMS ATTRIBUTABLE TO THE FACTS OR CIRCUMSTANCES GIVING RISE TO THE CLAIM."** On no basis could the statutory late payment penalties or interest recovery before this Court in either Count I or Count II be rationally considered attributable to any facts or circumstances giving rise to the claim dated 25 May 2000. In fact, the statutory penalties or interest did not arise until after Defendant violated the settlement terms requiring payment on June 17, 2006. The Defendant's arguments are inapposite and unsupportable.

On the other hand, based on the foregoing Clauses in the subject fixed price supply Contract, the applicable Statutes and Regulations, and the facts and circumstances arising during and after the settlement on May 18, 2006, there is no genuine issue as to Essex's right to recover the PPA late payment penalty and additional penalty for the late final payment in Count I or the CDA interest in Count II on the unpaid final contract amount due until paid on August 30, 2006. Further, the amount sought in Count III for professional services and expenses during Essex's continuous efforts to amicably resolve this matter without resort to prosecuting the litigation of a claim in this Court are allowable and properly recoverable until May 17, 2007, when the Government's new Contracting Officer completely frustrated these efforts by flatly refusing to address the matter without offering any explanation or justification.

## A. **Facts**[1]

As Defendant concedes, Essex, a small business concern, was awarded fixed price supply Contract No. F04606-94-D-0401 on September 30, 1994, for the production and delivery of generator sets. Essex completed the Contract in January 2002. [Prop.Find. 1] On May 25, 2000, Essex had submitted and on June 26, 2000, certified a CDA claim on the Contract for costs due to Government-caused performance delays resulting from Government changes. [Prop.Find. 2]. For almost six years, the Government's position was that it could not negotiate or resolve the claim because of its activities in Afghanistan and Iraq. There was never a dispute as to Essex's entitlement to payment on the claim. [Prop.Find. 3].

On May 18, 2006, the Government finally negotiated with Essex and the parties agreed to a final settlement of Essex's claim of May 25, 2000, with a confirmed "Date of Settlement (May 18, 2006)" and a release of the Government for equitable adjustments or claims on the Contract "**attributable to the facts or circumstances giving rise to the claim.**" The Government was allowed no more than 60 days from May 18, 2006, to fund and pay the final payment, resulting in a definite due date of July 17, 2006, or the settlement would then be immediately enforceable by Essex. Based on "holidays" and people "being on leave," the funding Modification P00007 was not issued by the Government until the payment due date of July 17, 2006. Also, on July 17, 2006, the Government issued Delivery Order 0004, confirming that the Contract was for "Supplies or Services" and adding Contract Line Items 0009 and 0010 for the final payment due, plus the accrued CDA interest through the settlement agreement date of May 18, 2006. Both Modification P00007 and

---

[1]For a detailed and documented Statement of Facts see the Plaintiff's Proposed Findings of Uncontroverted Facts [Prop.Find.] filed herewith, together with the Appendix.

Delivery Order 0004, directed the Government's payment office, DFAS, that payment "**Must**" be made as soon as possible upon receipt of Essex's invoice. [Prop.Find. 4-7 & 9]. Accordingly, Essex submitted its Invoice dated July 17, 2006, requiring payment immediately. [Prop.Find. 8]. DFAS then internally recorded its own "Payment Due" date of July 26, 2006. [Prop.Find. 10].

Without any justification, explanation, or even rationalization, the Government did not pay the amount due for the May 18, 2006, settlement until August 30, 2006, 104 days after the settlement agreement and 44 days after July 17, 2006, the agreed payment date. The Government included no PPA penalty in the payment and no CDA interest beyond the accrued interest as of May 18, 2006. As required by the PPA and its implementing Clauses and Regulations, Essex waited ten days for the Government to include the "automatic" PPA late payment penalty. Then, lacking the Government's payment of the PPA penalty, Essex submitted the required "demand" under the PPA regulations for the additional penalty amount due. [Prop.Find. 11-12]. After Essex's professional representative expended considerable efforts to reach an amicable resolution of the PPA penalties, Essex submitted the current CDA claim on December 29, 2006, as required by the PPA and its implementing Clauses and Regulations, while continuing to seek a discussion to amicably resolve the matter. On May 17, 2007, a new Government Contracting Officer flatly refused to address Essex's PPA rights without explanation or justification. Essex's accrued professional fees and expenses in the ultimately fruitless pursuit of an amicable resolution of these issues totaled 63.25 hours at $300 per hour and expenses of $190.50. [Prop.Find. 13-15].

**B. <u>Argument</u>**

At the bottom line, the Government should never have forced this litigation on this small business or this Court. There is no justification for the Government's silence for many months, until

May 17, 2007, and then blatant refusal to even address the PPA penalties or CDA interest issues here. What could possibly possess the Government to be arguing that the PPA or CDA is not applicable to the untimely final payment due on Essex's supply Contract that expressly incorporates both the PPA and the CDA?

Summary judgment on Essex's statutory right to the late payment penalties under the PPA on Count I or the interest under the CDA on Count II must be granted here where there are no genuine issues of material fact in dispute and Essex is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed.Cir. 1987); *Ralph Larson & Son, Inc. v. United States*, 17 Cl.Ct. 39, 42 (1989). There is no genuine issue of material fact as to Essex's statutory right to either the late payment penalty and additional penalty under the PPA or the mandatory interest under the CDA.

**(1) Essex Is Entitled To Summary Judgment On The "Automatic" Late Payment Penalty And Additional Penalty Under The Prompt Payment Act On Count I**

On May 18, 2006, Essex and the Government settled Essex's CDA claim arising from Government Change delays to performance, thereby establishing the final payment due on the Contract for the supply of generator sets. Not only did that settlement define the amount due, but it also (1) confirmed the accrued CDA interest up to the May 18, 2006, settlement date; (2) committed to the settlement for no more than 60 days to permit funding and payment, otherwise the agreement became immediately enforceable by Essex; and (3) established the funding and payment

due date of July 17, 2006, 60 days after the agreement. The Government chose to use a funding vehicle for the required payment in the form of a Modification and Order adding two Line Items to the supply Contract and specifying that payment must be made as soon as possible after Essex's invoice. Although the Government implemented the funding by the required date, the payment was not made by the due date of July 17, 2006. Essex did not then proceed with its right to enforce the settlement agreement, but promptly submitted its invoice that was already past due after July 17, 2006. The Government did not make the required payment on the agreed due date of July 17, 2006, nor did the Government make the required payment on its payment office's own chosen due date of July 26, 2006. Instead, the Government's payment office ignored the payment obligations and did not make the payment until August 30, 2006, and the Government then failed to even discuss or address the matter of penalties until a new Contracting Officer's flat refusal on May 17, 2007.

Defendant appears to argue that, regardless of the existence of an underlying fixed price supply contract, the PPA is inapplicable to a final payment due on that contract unless the payment itself was specifically keyed to an item of "property or services." If Defendant's argument were somehow to be accepted as a test for PPA applicability, the Government itself met that test by issuing Supplies or Service Order 0004 for Contract Line Items 0009 and 0010. On the other hand, Defendant's argument cannot rationally be accepted because then no final settlement payment on a supply contract, for changes, unforeseen conditions, or other matters not within an original specific line item would be subject to the PPA late payment penalty requirements. The statutes, clauses, regulations, facts, and precedent do not support such an argument.

First, Prompt Payment requirements are specifically applicable to "contract settlement actions" [FAR 52.232-25(a)(2)(ii)]. Second, Defendant's cited precedents are totally inapposite. In *New York*

*Guardian Mortgagee Corp. v. United States*, 916 F.2d 1558 (Fed.Cir. 1990), the plaintiff acquired 76 mortgages guaranteed by the Veterans Administration [VA] which were then defaulted. As provided by statute, plaintiff conveyed the properties to the VA and sought payment on the principal amount of the mortgages. After delays in payment, plaintiff sought PPA interest, but the Claims Court dismissed, holding that the procedure under which the VA acquired the properties was exclusively statutory and regulatory in nature and not contractual, as required by the PPA. Plaintiff appealed. The Court found:

> Congress expressly charged the Office of Management and Budget (OMB) with implementing regulations under the PPA. OMB Circular A-125 (June 9, 1987)). 52 Fed.Reg. 21926, is the implementing regulation required by Section 3903 of the PPA. There is no provision in the PPA which purportedly authorizes the recovery of interest under the Veterans Loan Guaranty.... The PPA covers only the acquisition of goods and services by government agencies under written contracts and was not intended to include the VA's statutory obligations under its guaranty loan program. There was no written contract in this case and none was required. *Id.*, 916 F.2d, at 1559-1560.

The Defendant's second principal precedent is equally inapposite.[2] In *FDL Technologies, Inc. v. United States*, 967 F.2d 1578 (Fed.Cir. 1992), FDL obtained a Board decision that a termination for default was improper. Equal Access to Justice Act [EAJA] fees were allowed by the agency but paid to FDL's trustee in bankruptcy. FDL's attorney in the Board proceeding sought direct payment of the EAJA fees plus PPA interest. The Claims Court dismissed the complaint and denied the claim

[2]Defendant's string citations do not add to its argument and did not involve either the PPA or the CDA. *Gavin v. United States*, 47 Fed.Cl. 486 (2000), concerned an Air Force captain's claim for reinstatement, a promotion, and back pay after she voluntarily requested separation. The Court held that the voluntary separation divested the Court of jurisdiction. *Smyth v. United States*, 302 U.S. 329 (1937), and *United States v. Mescalaro Apache Tribe*, 518 F.2d 1309 (1975), both predate the APA; the former denied interest on U.S. bonds after an advertised accelerated recall date and the later denied interest on Indian money held in trust for 47 years on behalf of 3 Indian tribes. *Library of Congress v. Shaw*, 478 U.S. 310 (1986), denied a performance addition of a "lodestar" to an attorney's fee claimed because payment was late on the fee awarded in successful litigation of a racial discrimination, back pay, and promotion claim.

that the EAJA fee and PPA interest should be paid to the attorney. The attorney appealed. The Circuit Court affirmed.

> The Prompt Payment Act does not apply to a claim for attorneys' fees under the EAJA since the item is not within the contemplation of the subject contract as a 'complete delivered item, property or service.' *Id.*, at 1579-1580
>
> We conclude that the prevailing party, and not counsel, is entitled to attorney fees awarded under 5 U.S.C. § 504(a)(1). *Id.*, at 1581.
>
> In this case, the amount owed by the Army was for attorney fees incurred by FDL, not for property or service delivered to the Army by FDL. Thus, even if we view the fee award as a contract, the Claims Court correctly determined that the Army's obligation under the contract **did not arise from the delivery of property or services**. Section 3902 [PPA] does not apply and FDL is not entitled under the prompt payment Act to interest on the attorney fee award. *Id.*, at 1581-1582. (emphasis supplied).
>
> "The settlement agreement...does not address the question of interest in the event of a breach of that agreement. The Prompt Payment Act does not apply to plaintiffs' first claim for interest [on the agricultural price support refund]...because the amount was in dispute...if the plaintiffs are to be awarded interest for this amount it must be under the Contract Disputes Act....However..., [o]nly contracts entered into by an executive agency for procurement of property..., services, construction, alteration, repair, or maintenance of real property or the disposal of personal property are covered by the CDA."

What can the Defendant hope to achieve by arguing that the PPA does not apply to a final payment due on a fixed price supply contract and citing cases involving claims for reinstatement, a promotion, and back pay arising from sexual harassment, claims arising from U.S. Bonds, claims arising from withheld Indian money, claims arising from late payment of attorney fees, claims arising from Veterans Administration mortgage guarantees, claims arising from EAJA fees, and claims arising from agricultural price supports? The Defendant's argument is particularly incredible when one of its principal precedents clearly finds that the PPA is applicable to claims, as here, that arise from the delivery of property or services." *FDL Technologies*, *supra.*

The Defendant's difficulty is self-evident from the lack of known precedent in which any question has ever been raised or been successfully argued regarding a contractor's right to PPA penalties on a late payment arising from a supply contract with the Government. Any such question was resolved early after the PPA was enacted. In *Stone Forest Industries, Inc. v. United States*, 973 F.2d 1548 (Fed.Cir. 1992), *reh'g den.* (1993), under a Forest Service Contract in 1977 that pre-dated the PPA, plaintiff agreed to purchase, cut, and remove timber. In 1984, the California Wilderness Act denied plaintiff's access to four of the fourteen areas included in the Contract. Plaintiff claimed a refund of its deposit applicable to the areas to which it was denied access. The Forest Service refunded deposits and conceded CDA interest on these amounts. The Forest Service paid the refunds, but did not pay the accrued CDA interest on the refunds when paid. The plaintiff claimed additional interest for the time that the government did not pay the accrued CDA interest at the time of the refund payment until it finally paid the interest. No explanation was offered for the failure to pay the CDA interest other than an argument that no additional interest began to accrue at the time that the CDA interest on the refund obligation was not paid when the refund was paid. The Claims Court disagreed, holding that it would be inequitable to permit the Government to have the benefit of the withheld CDA interest until that CDA interest was finally paid without requiring the payment of additional interest on the late CDA interest payment.

> On appeal, the government asserted that sovereign immunity insulated it from the payment of the additional interest claimed. The Court found that "[i]n *ACS Const. Co. v. United States*, 230 Ct.Cl. 845 (1982), our predecessor court held that the Contract Disputes Act did not authorized payment of interest on an interest liability. We remain bound by that precedent, and must reverse the Claims Court's award of additional interest, **taking note that the Prompt Payment Act (PPA), 31 U.S.C. §§ 3901-3906 (1982), amended by 31 U.S.C. §§ 3901-3907 (1988) should avoid such abuses [by the government] in the future.**" *Id.*, at 1553-1554 (emphasis supplied).

Since *Stone Forest Industries, Inc.*, *supra.*, there is no known precedent, and none has been cited by the Defendant, in which the Government successfully argued that the PPA was not applicable to the late payment of an amount due a contractor arising from a Government supply contract awarded after the effective date of the PPA. Here, the parties agreed to a payment due date of July 17, 2006, and the Government did not meet the required due date, although the Government did fund the required payment on time and mandated that the payment must be made as soon as possible. Although the agreement vested Essex with the right to enforce the payment requirement immediately, Essex made the reasonable decision to wait until July 26, 2006, which was the due date chosen by the Government's payment office. The payment was not made by the Government's own chosen payment date. Without any right, the Government waited until August 30, 2006, to make the payment that had been agreed to be due on July 17, 2006.

Under the PPA and *Stone Forest Industries, Inc.*, *supra.*, there is no basis whatsoever for a RCFC Rule 12(b)(6) dismissal as sought by Defendant. Essex is entitled to summary judgment on Count I. A late payment penalty is due on the total amount due, as well as an additional penalty for the Defendant's failure to automatically pay the late payment penalty as required by the PPA. Also, interest accrues on the unpaid penalties for one year or until a CDA claim is filed. Since Essex had reasonably proceeded according to the payment office's date of July 26, 2006, as the due date for PPA purposes [nine days of interest would not have been worth a fight], Essex has a statutory right to recover on Count I, as follows:

| | | |
|---|---|---|
| Total Payment Due: | $1,508,107.99 | |
| PPA interest penalty 7/26 - 8/25, 2006: 5.75%: | 7,226.35 | $ 7,225.35 |
| [FAR 52.232-25(5) & (6) | | |

| | | | |
|---|---|---|---|
| | | $1,515,334.34 | |
| PPA interest 8/25 - 30, 2006: 5.75%: | | | 1,210.16 |
| | | | $ 8,435.51 |
| PPA additional penalty: 5 CFR §1315.11: | | | 5,000.00 |
| | | | $13,435.51 |
| Continuing interest to the CDA claim, 12/29/06: [5 CFR § 1315.10(a)(4) & (5)] | | | |
| September, 2006: $13,435.51 x 5.75% x 30/360: | | | 64.38 |
| October, 2006: | $13,435.51 | | |
| | 64.38 | | |
| | $13,499.89 x 5.75% x 30/360: | | 64.69 |
| November, 2006: | 64.69 | | |
| | $13,564.58 x 5.75% x 30/360: | | 65.00 |
| December 29, 2006: | 65.00 | | |
| | $13,629.58 x 5.75% x 29/360: | | 63.13 |
| | Total Due: | | $ 13,692.71 |

Essex is also entitled to statutory interest on the amount found due here from the date of Essex CDA claim of December 29, 2006, to the date the amount due is paid.

**(2) <u>Essex Has A Statutory Right To Summary Judgment On Count II</u>**

The only argument offered by the Defendant for summary judgment is the "plain language of the settlement agreement." Yet, Defendant does not actually argue the "plain language," rather, Defendant argues an expansion of release language in the funding modification required by the earlier settlement agreement. Defendant argues that this expansion should include matters and rights arising after and beyond the limits of the plain language of the limited release.

On May 18, 2006, the parties finally negotiated and agreed to a settlement of Essex's CDA claim dated May 25, 2000, for change delays during performance of its supply contract that had been completed in January, 2002, plus accrued interest to May 18, 2006. Both Essex and the Government

committed to this agreement for a period of 60 days with both funding and payment to occur by the due date of July 17, 2006, or the agreement would then be enforceable by Essex. The Government complied with the funding obligation by Modification P00007, issued on July 17, 2006, Essex immediately submitted its invoice for the final payment due. Even though the Government Contracting Officer directed DFAS, the payment office, that payment "**Must**" be made as soon as possible after Essex's Invoice and DFAS established its own due date of July 26, 2006, DFAS did not comply with the Government's payment obligation until August 30, 2006. [Prop.Find. ¶¶ 4-11]. Accordingly, Essex requested and continuously sought a resolution of its rights resulting from the Government's late payment until May 17, 2007, when a new Contracting Officer refused to even discuss the matter. [Prop. Find. ¶¶ 12-15]. Essex was thus forced to initiate the prosecution of its statutory rights in this Court under the PPA in Count I of the Complaint and, in light of the Government's refusal to recognize the PPA, the prosecution of its CDA rights in Count II based on its agreed enforcement rights for the Government's non-payment on July 17, 2006.

The funding Modification P00007, required to be issued by July 17, 2006, reiterated the "**Date of Settlement (May 18, 2006)**" and stated:

> "In consideration of the modification agreed to herein as **complete settlement of the Contractor's claim dated 25 May 2000 and certified 25 Jun 2000**, the Contractor hereby releases the Government from any and all liability under this contract **for further equitable adjustments or claims attributable to the facts or circumstances giving rise to the claim**." (emphasis supplied).

The limits of the plain language of this release is for "equitable adjustments or claims attributable to the facts or circumstances giving rise to the claim." Since the "claim" was "dated 25 May 2000", the "facts or circumstances giving rise to the claim" could only have occurred before "25 May 2000". Yet, Defendant argues that this plain language should somehow be altered to cover

Essex's PPA and CDA rights arising from facts and circumstances that have occurred **after the settlement itself on May 18, 2006, and after the Government failure to pay on the July 17, 2006**, agreed due date. The limited release language demonstrates that there was no intent to release the Government from responsibility for a subsequent failure to pay on the required due date. (See, also, Append. pp. 2-5].

Even if the plain language of the release was not limited to events and circumstances that could only have occurred before "25 May 2000", "absent special vitiating circumstances, a general release bars claims based upon **events occurring prior to the date of the release**." *Johnson, Drake & Piper, Inc. v. United States*, 531 F.2d 1037, 1047 (Ct.Cl. 1976). All of the events and circumstances giving rise to the statutory rights in Count I and Count II occurred **after** the settlement agreement of May 18, 2006, and the release and Government's non-payment on July 17, 2006. If the payment had been made, we would not be here.

The single precedent offered by Defendant is even more questionable than its argument that the funding modification release bars Essex's subsequent PPA and CDA rights. *Information Systems and Networks Corp. v. United States*, 68 Fed.Cl. 336 (2005), involved a small business set aside under the Small Business Act § 8(a) tripartite contract program, in which the Air Force awarded a contract to the Small Business Administration [SBA] and the SBA then awarded a subcontract to Information Systems and Networks Corp. [ISN], a small disadvantaged business, to perform the required work. As provided in the SBA § 8(a) program, the ISN subcontract incorporated the prime contract between the Air Force and the SBA in its entirety. Ultimately, the Air Force issued a Termination for Convenience; the Air Force and ISN could not agree on a settlement; ISN appealed to the Armed Services Board of Contract Appeals [Board]; and the Board found entitlement for ISN

and ordered negotiations on quantum. The Air Force and ISN reached a settlement agreement on the prime contract that included a general "release of any and all claims and...other matters under or related to the Contract." After payment, ISN then filed another CDA claim, contending that the prime contract settlement did not settle its subcontract with the SBA, even though ISN conceded that the prime contract incorporated all of the subcontract terms, as did the subcontract incorporate all of the prime contract. It should be no surprise that the Court held that ISN was bound by its "broadly-worded, generalized release of its claims." [*Id.*, at 345-346]. However, Defendant here fails to recognize that the Court cited *Johnson, Drake & Piper, Inc.*, supra., "a general release bars claims based upon events occurring **prior to the date of the release**." [*Id.*, emphasis supplied].

Not only is the release in the funding modification of July 17, 2006, limited to "equitable adjustments or claims attributable to the facts or circumstances giving rise to the claim...dated 25 May 2000", but Essex's PPA and CDA rights before this Court arise from events and circumstances **after** the Government's failure to pay the amount due on July 17, 2006; that payment date was established by the settlement agreement of May 18, 2006, and was funded by the modification of July 17, 2006. There was never any intent for Essex's PPA and CDA rights to be covered by the prior limited release. Defendant's argument that the limited release bars Essex's subsequent PPA and CDA rights is totally without merit.

As demonstrated in Section IV.B(1), above, Essex has the right to summary judgment on its Count I for the PPA late payment penalty and additional penalty. If it is somehow found that Essex is not entitled to its PPA rights, then Essex is entitled to summary judgment on its Count II CDA interest. There is no genuine issue on the fact that the settlement commitment of May 18, 2006, was effective "for no more than 60 days" and, if the required payment was not funded and paid by the

definite date of July 17, 2006, Essex had the right to immediately enforce the agreement. [Prop. Find. ¶¶ 4-7]. Essex never waived its enforcement rights. Under the CDA, Essex is entitled to interest from the date of its claim certification on June 25, 2000, to the date of payment on August 30, 2006. Essex agreed to wait 60 days for the Government to fund **AND** pay the amount due. The Government funded the amount due on the required date of July 17, 2006, but breached the agreement by not making the required payment until August 30, 2006, thus making it subject to enforcement by Essex. Under the CDA, interest is mandated to be paid on the amount found due until paid at the Treasury rate for each six month period from January 1 through June 30 and July 1 through December 31. Consequently, if recovery under Count I is denied, Essex is entitled to summary judgment under Count II to CDA interest on the amount stipulated to be due on its claim from May 18, 2006, to August 30, 2006, as follows:

| | | |
|---|---|---|
| Amount found due: | $1,164,832.00 | |
| Treasury Interest Rate May 18, 2006, thru June 30, 2006: 5.125%: | | $ 7,130.55 |
| Treasury Interest Rate July 1, 2006, thru August 30, 2006: 5.75%: | | 11,349.02 |
| | Total: | $18,479.57 |

Of course, Essex is also entitled to interest on the amount found due on Count II from the date of its current CDA claim of December 29, 2006, to the date of payment.

**(3) Defendant's Final Argument Is Disingenuous At Best**

Defendant's final argument is that, if the prior arguments to bar Essex's PPA and CDA rights are not successful, then Essex is entitled to the PPA penalties, but the Court should ignore the May 18, 2006, settlement agreement and Government commitments that defined July 17, 2006, as the

funding and payment due date. Defendant argues that regardless of the uncontroverted facts, the Court should simply apply the standard 30 day period for payment under the PPA.

The parties agreed to a funding and payment due date of July 17, 2006, and, if that agreement was breached the amount due was immediately enforceable. Essex had a right to prompt payment of the amount due or penalties would be imposed. [31 U.S.C. Chapter 39 "Prompt Payment", § 3902. Interest Penalties]. A small business, as here, has the right to expect payment through "accelerated" or "different...procedures..in...unique circumstances, including payment within 7 days after the invoice date," with PPA penalties and, then, additional penalties if payment was made after the due date without including the automatic late payment penalty. [Code of Federal Regulations, Prompt Payment, 5 CFR §1315.5 & .11; FAR Subpart 32.9 -- Prompt Payment, 32.903(a)(3) & (5) & 32.908( c)(2)]. The Defendant's own payment office selected July 26, 2006, as its scheduled payment due date, which was nine (9) days after the invoice date. [Prop.Find. ¶¶ 8 & 10]. The nine day payment period selected by the Government is in accord with the mandate to pay as soon as possible with seven days having been the authorized minimum period for accelerated payments to a small business under the PPA. There is absolutely no justification, and none has been offered by Defendant here, for the Court to disregard the settlement committments of the parties and the Government's own selected payment period for PPA purposes.[3]

**(4) <u>The Professional Fees And Expenses For Services On Behalf Of Essex Seeking To Amicably Resolve Payment Of The Amount Due Are Allowable And Must Be Paid</u>**

Independent professional fees and expenses are allowable under FAR 31.205-33, subject to

[3]The Defendant's final reference to the Department of Defense Regulation Supplements [DFARS] 232.900, *et seq.*, has no meaning here since Essex is not a "small disadvantaged business."

other specific exclusionary regulations not applicable here [FAR 31.205-3 "Bad Debts"; FAR 31.205-20 "Interest and other financial costs"; FAR 31.205-22 "Lobbying and political activity costs"; FAR 31.205-27 "Organization costs"; FAR 31.205-28 "Other business expenses"; FAR 31.205-30 "Patent costs"; FAR 31.205-38 "Selling costs"; and FAR 31.205-47 "Costs related to legal and other proceedings"]. The allowable professional fees and expenses are recovered from the Government, when reasonable in relation to the services rendered; when the contractor's use of such outside services is necessary rather than having an in-house employee; and considering the qualifications of the professional and the professional's customary charges. *R-D Mounts, Inc.*, ASBCA No. 17422, *et al.*, 75-1 BCA ¶ 11,077, at 52,745, recons. den., 75-1 BCA ¶ 11,237, *aff'd* 2 Cl.Ct. 320 (1983); and *Baifield Indus., Div. Of A-T-O, Inc.*, ASBCA ¶ 12,096, at 58,086, *recons. den.*, 76-2 BCA ¶ 12,203. The only issue in the recovery of such fees and expenses as an allowable cost of contract administration has always been whether they were actually unallowable as intended for the prosecution of a claim against the Government. *Bill Strong Enterprises, Inc. v. Shannon*, 49 F.3d 1541 (Fed.Cir. 1995), *overruled in part on other grounds* [progeny of the "claim" definition in *Dawco Construction, Inc. v. United States*, 930 F.2d 872 (Fed.Cir. 1991)] *Reflectone Inc. v. Dalton*, 60 F.3d 1572, 1579 (Fed.Cir. 1995) ["To the extent that *Dawco* and its progeny have been read to also hold that, based on FAR 33.201, a 'claim' (other then a routine request for payment) must already be in dispute when submitted to the C.O., they are overruled."].

Apart from the *Dawco* "claim" definition, the decisions in *Bill Strong* and *Reflectone* are entirely consistent on the question of when a matter changes from allowable professional fees and costs in seeking the settlement of a contractor's rights to unallowable fees and costs for prosecution of a claim against the Government. *Bill Strong* held that the allowability of such costs turn on the

contractor's intent and noted that, while a contractor may experience such costs for the sole purpose of prosecuting a claim against the Government, thus making the costs unallowable, most contractors hope to negotiate a settlement and, as such, those costs normally are not costs of prosecuting a claim.

Consequently, the inquiry is not a bright line test of before or after the contractor's submission of a CDA claim, but rather the point when the contractor's efforts and intent have necessarily changed from attempting to reach a negotiated settlement to the actual prosecution of the claim.

> In classifying a particular cost as either a contract administration cost or a cost incidental to the prosecution of a claim, contracting officers, the Board, and the courts should examine the objective reason why the contractor incurred the cost. [citations omitted]. If a contractor incurred the cost for the genuine purpose of materially furthering the negotiation process, such cost should normally be a contract administration cost allowable under FAR 31.205-33, even if negotiation eventually fails and a CDA claim is later submitted. [citation omitted]. On the other hand, if a contractor's underlying purpose for incurring a cost is to promote the prosecution of a CDA claim against the Government, then such cost is unallowable under FAR 31.205-33. *Bill Strong*, 49 F.3d at 1550, *See also Grumman Aerospace Corpp.*, ASBCA No. 50090, 01-1 BCA ¶ 31,316, *aff'd*, 34 Fed.Appx. 710 (Fed.Cir. 2003).

In *Reflectone*, the Court stated:

> Finally, as we previously noted, 'there is no necessary inconsistency between the existence of a valid CDA claim and an expressed desire to continue to mutually work toward a claim's resolution.' *Transamerica Ins. Corp. v. United States*, 973 F.2nd 1572, 1579 (Fed.Cir. 1992). The parties are not prevented or discouraged from settling their differences because the first written demand for payment as a matter of right that is not merely a routine request for payment is recognized and treated as a CDA 'claim.' If anything, such a rule promotes settlement by preventing procrastination." *Id.*, 60 Fd.3rd, at 1583.

Here, Essex's professional representative's services were devoted to a resolution of the routine request for late payment penalties specified in the PPA. These efforts continued after the current CDA claim was submitted on December 29, 2006, as required by the PPA within one year after a Government failure to pay the automatic PPA penalties. Essex's representative spent 52.5 hours in services and $152.50 in expenses for 112 facsimile transmissions and 81 e-mails and other

communications for a total of $15,902.50 in fees and expenses until the preparation and submission of Essex's CDA claim of December 29, 2006. [Append. pp. 14-17]. There is no genuine issue as to Essex's right to recover these fees and expenses in an effort to resolve the routine payment of a late payment penalty and additonal penalty that are intended to be automatic under the PPA. The only issue might involve the 10.75 hours and $38.00 in subsequent professional services and expenses. However, it is uncontroverted and beyond dispute that these services and expenses were still intended to reach an amicable resolution of the matter until the new Contracting Officer's flat refusal on May 17, 2007. These fees and expenses are, therefore, similarly recoverable by Essex [Prop.Find. ¶¶ 4 – 15].

Essex is entitled to summary judgment for professional services, resulting in a fee of $18,975.00, plus expenses of $190.50, for a total of $19,165.50.

## V. CONCLUSION

On the basis of the uncontroverted material facts, the supply contract clauses, the statutes and regulations, and precedent, Essex is entitled to summary judgment –

A. On Count I, for PPA penalties and continuing interest to December 29, 2006, in the amount of $13,692.71, plus interest on the amount found due from Essex's CDA claim dated December 29, 2006, to payment; or

B. On Count II, for CDA interest from May 18 to August 30, 2006, in the amount of $18,479.57, on the Defendant's violation of the settlement requiring funding and payment on July 17, 2006, plus interest on the amount found due from Essex's CDA claim dated December 29, 2006, to payment; and

C. On Count III, the allowable professional fees and expenses in the amount of $19,165.50 for

services in seeking to amicably resolve Essex's PPA or CDA rights without proceeding with the prosecution of a claim against the Government until May 17, 2007, when the Government refused to discuss the matter.

Respectfully submitted,
/s/ Charles E. Raley
Charles E. Raley
Counsel for Plaintiff
54 Governors Road
Hilton Head Island, SC 29928
Tel: 843-363-6634
Fax. 843-363-6635

Certificate of Service

I hereby certify that on this the 24th day of October, 2007, the foregoing Plaintiff's Opposition To Defendant's Motions to Dismiss and for Summary Judgment and Plaintiff's Cross-motion for Summary Judgment, with Plaintiff's Proposed Findings of Uncontroverted Fact and Appendix, were electronically filed with the Court. I understand that notice of this filing will be sent to Defendant's counsel by operation of the Court's ECF System, which may be accessed through the System.

/s/ Charles E. Raley
Charles E. Raley