No. 07-348 C
(Judge E. Bruggink)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

ESSEX ELECTRO ENGINEERS, INC.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND ITS MOTION FOR SUMMARY JUDGMENT, AND DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

---

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

BRIAN M. SIMKIN
Assistant Director

MATTHEW H. SOLOMSON
Trial Attorney, Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-3274
Fax: (202) 514-8624

November 13, 2007

Attorneys for Defendant

TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................... ii

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND ITS MOTION FOR SUMMARY JUDGMENT, AND DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT.........................................................................1

I. The United States Is Entitled To Summary Judgment Based Upon The Plain Language Of The Settlement Agreement ...........................2

A. The Government's Settlement Agreement With Essex Precludes Its Claim For Additional Interest Because The Government Complied With The Terms Of That Agreement And Because The Modification Contained A General Release of Claims..............................................................3

B. The Prompt Payment Act Does Not Apply To The Settlement Payment At Issue Here ..........................................................................................7

II. Assuming Essex Can Recover PPA Interest, Essex Cannot Demonstrate That Payment Was Due On July 26, 2006 .........................................................9

III. Essex Has Not Demonstrated That It Is Entitled To Any Fees Or Expenses ........10

CONCLUSION...................................................................................................................13

## TABLE OF AUTHORITIES

### CASES

Boers v. United States,
44 Fed. Cl. 725 (1999) .......... 8

P.R. Burke Corp. v. United States,
58 Fed. Cl. 549 (2003) .......... 11

Cf. SAB Construction, Inc. v. United States,
66 Fed. Cl. 77 (2005) .......... 11

F. Alderete Gen. Contractors, Inc. v. United States,
715 F.2d 1476 (Fed. Cir. 1983) .......... 8

FDL Technologies, Inc. v. United States,
967 F.2d 1578 (Fed. Cir. 1992) .......... 7

Franklin Federal Savings Bank v. United States,
55 Fed. Cl. 108 (2003) .......... 12

Gutz v. United States,
45 Fed. Cl. 291 (1999) .......... 8

Information Systems and Networks Corp. v. United States,
68 Fed. Cl. 336 (2005) .......... 2, 3

King v. Department of the Navy,
130 F.3d 1031 (Fed. Cir. 1997) .......... 4

Liberty Mut. Ins. Co. v. United States,
70 Fed. Cl. 37 (2006) .......... 8

Neal & Co., Inc.,
1990 WL 34712 (D.O.T.C.A.B. Jan. 5, 1990) .......... 4

Plano Builders Corp. v. United States,
40 Fed. Cl. 635 (1998) .......... 11

Reflectone, Inc. v. Dalton,
60 F.3d 1572 (Fed. Cir. 1995) .......... 11

Singer Co., Librascope Div. v. United States, ,
568 F.2d 695 (Ct. Cl. 1977) .......... 10

Stone Forest Indus., Inc. v. United States,
973 F.2d 1548 (Fed. Cir. 1992) .......... 8

Travelers Cas. and Sur. Co. of America v. United States,
75 Fed. Cl. 696 (2007) .......... 12

W&F Building Maintenance Co. v. United States,
56 Fed. Cl. 62 (2003) .......... 3

**STATUTES AND REGULATIONS**

5 C.F.R. § 1315.5 .......... 9

31 U.S.C. § 3902(a) .......... 7

31 U.S.C. § 3903(a)(1)(B) .......... 9

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ESSEX ELECTRO ENGINEERS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 07-348 C |
| | ) | (Judge E. Bruggink) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND ITS MOTION FOR SUMMARY JUDGMENT, AND DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

On September 26, 2007, defendant, the United States, filed a motion to dismiss Count I of plaintiff's Complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). In the alternative, we requested that the Court grant summary judgment to the United States on Count I of the Complaint, pursuant to RCFC 56. Finally, also pursuant to RCFC 56, we asked that the Court grant summary judgment to the United States on Count II of plaintiff's Complaint. On October 24, 2007, plaintiff Essex Electro Engineers, Inc. ("Essex") filed its opposition to defendant's motion to dismiss and for summary judgment and plaintiff's cross-motion for summary judgment ("Pl. Opp.").

This Court should grant defendant's motion and deny Essex's cross-motion. First, Essex grossly misrepresents the terms of the applicable settlement agreement, which bars Essex's claims in this case. In that regard, Essex cannot maintain, as it attempts to do, both that the settlement payment at issue here was one for good and services subject to the Prompt Payment Act (PPA), but that the broad release Essex executed, as part of the settlement, does not cover its

new claims for interest. Second, even if the Prompt Payment Act applies to the settlement payment, the Government had 30 days in which to pay Essex's invoice for the settlement amount. Finally, Essex is not entitled to recover any attorney fees or expenses.

## I. The United States Is Entitled To Summary Judgment Based Upon The Plain Language Of The Settlement Agreement

As explained in detail below, the Government is entitled to summary judgment because, while counsel for Essex insisted – sometime after the parties discussed a settlement on May 19, 2006 via e-mail – that the Government's settlement payment be made by a certain date, Essex ultimately executed a settlement modification that required only that payment occur "as soon as possible." Moreover, Essex executed that settlement modification without any reservation of rights to seek additional interest and without stipulating that payment had to be made by some date certain. Under those facts, Essex's claim that the Government's payment somehow was late does not preclude the Government's entitled to summary judgment on this issue.

Indeed, the documents Essex has submitted in support of its cross-motion for summary judgment demonstrate conclusively that the Government's view of the settlement modification is correct. Notwithstanding Essex's revisionist history crafted in the heat of litigation, the parties understood that the Government only had to pay to Essex the settlement amount "as soon as possible" or within a "reasonable period of time." Indeed, the evidence Essex submitted in support of its cross-motion could not be more supportive of the fact that Essex knows full well that the settlement contained no specific payment due date. This is particularly true given that Essex – and not the Government – first recounted the terms of the proposed settlement in writing; thus, the Government's position here is identical to Essex's contemporaneous understanding of the settlement agreement.

**A. The Government's Settlement Agreement With Essex Precludes Its Claim For Additional Interest Because The Government Complied With The Terms Of That Agreement And Because The Modification Contained A General Release of Claims**

Essex signed contract modification P00007 ("settlement modification" or "settlement agreement"), with a July 17, 2006 effective date. Def. Mot. at Exhibit A. That settlement modification provided that the Government would pay Essex $1,508,107.99 "for full and complete settlement of [Essex's] claim." Id. That sum included both a payment for the "[s]ettlement of [a] claim for unabsorbed overhead" and for "[i]nterest on [t]he settlement amount [f]rom date of certification (26 Jun 2000) thru [d]ate of settlement (18 May 2006)." Id. The settlement modification also provided that Essex "releases the Government from any and all liability under this contract for further equitable adjustments or claims attributable to the facts or circumstances giving rise to the claim." Id.

Significantly, the settlement agreement at issue provided that "payment should be made AS SOON AS POSSIBLE," but did not incorporate any statute or regulation relating to the Prompt Payment Act, or any other provision regarding interest penalties. Id. Nor did the modification indicate a date certain by which the Government was required to pay Essex the settlement amount. Essex received the total settlement agreement payment on August 30, 2006. Pl. Compl. at ¶ 29.

Accordingly, whether this Court looks only at the July 17, 2007 settlement modification, or whether the Court views the parties' May 19, 2007 e-mail exchange as containing relevant settlement terms, or whether the Court simply uses that e-mail exchange to interpret the terms of the modification, the result is the same: the parties contemplated that Essex would be paid only the sum it received on August 30, 2006, and nothing more. See Information Systems and Networks Corp. v. United States, 68 Fed. Cl. 336, 341-44 (2005) (discussing interpretation of settlement agreement); W&F Building Maintenance Co. v. United States, 56 Fed. Cl. 62, 68

(2003) ("It is appropriate for the court to consider the extrinsic evidence . . . to ascertain the completeness of the settlement agreement and modification.").

Defendant's conclusion is correct particularly given that Essex signed the modification absent any reservation of rights. 68 Fed. Cl. at 345-46 ("ISN received a settlement payment from the United States in exchange for its agreement to a broadly-worded, generalized release of its claims. While the company had the opportunity to refuse that agreement, or to except claims from it, it failed to do so."). For example, in Neal & Co., Inc., 90-1 BCA P 22586, 1990 WL 34712 (D.O.T.C.A.B. Jan. 5, 1990), the contractor executed a settlement modification, but then invoiced for the settlement amount plus interest "to the time this invoice is paid to us." Id. The Board rejected the contractor's subsequent claim for such interest, holding that "when parties reach an agreement and document that agreement without recording any exception thereto, they are precluded from seeking further recompense." Id.

Because there can be no dispute regarding the terms of the settlement agreement, the Government is entitled to judgment as matter of law. See King v. Department of the Navy, 130 F.3d 1031, 1033 (Fed. Cir. 1997) ("The interpretation of a settlement agreement is an issue of law.").

In contrast, Essex's opposition to the Government's motion to dismiss and for summary judgment rests upon an incorrect and unsupported settlement term. Plaintiff asserts that "[t]he Government was allowed no more than 60 days from May 18, 2006, to fund and pay the final [settlement] payment, resulting in a definite due date of July 17, 2006." Pl. Opp. at 14. Essex notably fails to cite any evidence in support of that assertion. Indeed, as discussed in more detail below, the documents contained in Essex's appendix to its motion ("Pl. App.") demonstrate that Essex's assertion is glaringly incorrect.

On May 19, 2006, Charles E. Raley – Essex's counsel in this case – sent an e-mail to the Government in which he indicated Essex's understanding was that "[t]he total [settlement] payment will be made as soon as possible using the Government's best efforts." Pl. App. at 2 (emphasis added) (noting also that the Government would have a "reasonable period of time" within which to pay the settlement). In response to that e-mail, also on May 19, 2006, the contracting officer, Jane Hargis, "confirm[ed] the Government's agreement to settle [Essex's] claim for the amount specified in [Mr. Raley's] email . . . including CDA interest up to an including May 18, 2006." Id. Ms. Hargis did not indicate when payment would be made in light of Mr. Raley's view that the "full and final settlement" only required that payment be made "as soon as possible." Id. (emphasis added). Notably, Mr. Raley's contemporaneous understanding of the proposed settlement was that it was "a full and final settlement of the pending [Essex] Claim and any other issue arising under the subject Contract F04606-94-F0401." Id. (emphasis added).

Mr. Raley then responded to Ms. Hargis' e-mail, thanking her "for confirming the agreement." Pl. App. at 1. Mr. Raley further explained that "[b]ased on [his] prior experience in these matters, the payment modification need only recite the terms stated in [his earlier] e-mail, namely the amount due and that the pending claim and any and all other issues arising under the Contract, whether known or unknown, are fully and finally settled by the payment of the required amount." Id. (emphasis added). Again, however, Mr. Raley did not suggest that the settlement agreement required that payment be made by any specific date. Id.

On May 31, 2006, the contracting officer sent yet another e-mail to Mr. Raley to make sure that he agreed that "the [total] amount due to Essex from the Government" was $1,508,107.99, including interest. Pl. App. at 3. The contracting officer acknowledged that "the

Government does not expect [Essex] to wait an unreasonable amount of time" but asked that Essex commit to the aforementioned sum "for a period of 60 days." Id. at 4. In particular, the contracting officer expressed a willingness to "entertain discussions of additional interest" if the funding delay ultimately proved "unreasonable." Id.

Mr. Raley, in turn, agreed "that the settlement amount plus interest to and including May 18, 2006, totals the sum of $1,508,107.99." Pl. App. at 3. Mr. Raley warned, however, that Essex would "allow a period of no more than 60 days from May 18, 2006, in order for the funding modification and payment to occur." Id. (emphasis added). Mr. Raley did not state what the supposed consequences would be, from Essex's point of view, if the Government were to pass the 60 day mark (counting from May 18, 2006) without having issued the funding modification and payment.

The contracting officer again replied to Mr. Raley, but stated only that the Government was "exploring several avenues to obtain the funds and hopefully, we will be able to do so very quickly." Id. The Government did not acquiesce to any specific payment date; indeed, there was no reason to do so, as the parties already had agreed that the Government had a reasonable period of time in which to pay the settlement. Pl. App. at 2.

Thus, while Essex did not accept the Government's insistence that Essex commit to the settlement sum of $1,508,107.99 for the 60 day period following May 31, 2006, neither did the Government accept Essex's view that the Government had only 60 days from May 18, 2006 within which to pay the settlement. Moreover, it is equally clear that neither party attempted to alter the May 19, 2006 understanding that payment be made "as soon as possible using the Government's best efforts." Pl. App. at 2 (emphasis added) (noting also that Government would have a "reasonable period of time" within which to pay the settlement). Notwithstanding Mr.

Raley's insistence, on May 31, 2006, that the modification and payment be made within "60 days from May 18, 2006," Essex, as explained above, signed the settlement modification, which contained a broad release of claims but no reservation of rights or a payment due date. Accordingly, the Government, and not Essex, is entitled to summary judgment.

**B. The Prompt Payment Act Does Not Apply To The Settlement Payment At Issue Here**

Essex cannot dispute that the PPA applies, by its terms, only to an invoice for a "complete delivered item of property of service." 31 U.S.C. § 3902(a). Instead, Essex rhetorically asks:

> What can the Defendant hope to achieve by . . . citing cases involving claims for reinstatement, a promotion, and back pay arising from sexual harassment, claims arising from U.S. Bonds, claims arising from withheld Indian money, claims arising from late payment of attorney fees, claims arising from Veterans Administration mortgage guarantees, claims arising from EAJA fees, and claims arising from agricultural price supports?

See Pl. Opp. at 19. The answer is that all of those cases demonstrate that invoices for anything other than a "complete delivered item of property or service" are not subject to the PPA.

For example, in FDL Technologies, Inc. v. United States, 967 F.2d 1578, 1581-82 (Fed. Cir. 1992), the appellant argued it was entitled to PPA interest on an attorney fee award "because it was made by means of [a] Contract Modification" and thus "was reduced to a contract debt." The Federal Circuit rejected that contention, holding that the PPA "provides for interest only on amounts due for property or service." Id. (emphasis in original). The Federal Circuit's holding in FDL disposes of plaintiff Essex's claim here because, under the settlement modification at issue, the Government's obligation to pay Essex "did not arise from delivery of property or services." Id. at 1582. Rather, the Government paid Essex to release claims that it otherwise threatened to litigate. Moreover, the settlement modification explicitly indicated that the Government's payment was for the "[s]ettlement of [a] claim for unabsorbed overhead." Def. Mot. at Exh. A.

In sum, the settlement payment to Essex simply was not for an invoice for delivery of an "item of property" or a "service."

Likewise, Gutz v. United States, 45 Fed. Cl. 291 (1999), involved a claim against the Government for its alleged breach of a settlement agreement. Id. at 298. Although plaintiffs claimed interest on that sum under the PPA, the Court held that "because the head of agency was not acquiring property or services from plaintiffs, section 3902(a) of the Prompt Payment Act . . . does not apply." Id. at 299 (citing FDL Techs, 967 F.2d at 1581-82, and explaining that "plaintiffs are not entitled to recover interest . . . in the absence of language in the settlement agreement expressly providing for payment of interest").

Essex's claim here is no different from the rejected interest claims addressed in the FDL and Gutz decisions. In this case, Essex's PPA claim is based on an allegedly late settlement payment "for unabsorbed overhead due to Government caused delay" and related interest already paid. See Compl. at ¶ 22. But, Essex does not allege – nor could it – that the Government made any late payments for an "item of property or service" in this case. See also Boers v. United States, 44 Fed. Cl. 725, 732 (1999) (Bruggink, J.) (holding PPA "does not apply here as the agency was not acquiring goods or services from plaintiffs"), aff'd, 243 F.3d 561 (Fed. Cir. 2000) (unpublished).[1] Accordingly, Essex's claim for additional interest must be rejected.

---

[1] Although Essex relies on Stone Forest Indus., Inc. v. United States, 973 F.2d 1548, 1553-54 (Fed. Cir. 1992), the portion of that case that Essex cites is rank dicta, and thus does not control the outcome here. See Liberty Mut. Ins. Co. v. United States, 70 Fed. Cl. 37, 51 (2006) ("Although Supreme Court dicta are binding on subordinate lower federal courts, the Federal Circuit has cautioned that dicta in its own decisions 'should be read in the light of the court's central holding and the controlling fact in that case.'" (quoting F. Alderete Gen. Contractors, Inc. v. United States, 715 F.2d 1476, 1479 (Fed. Cir. 1983)). Moreover, the Federal Circuit decided FDL Technologies before Stone Forest; thus, to the extent that the two opinions conflict, FDL is binding.

**II. Assuming Essex Can Recover PPA Interest, Essex Cannot Demonstrate That Payment Was Due On July 26, 2006**

Essex agrees with the Government that generally there is a "standard 30 day period of payment under the PPA." Pl. Opp. at 27; see 31 U.S.C. § 3903(a)(1)(B) (invoices ordinarily must be paid within "30 days after a proper invoice for the amount due is received if a specific payment date is not established by contract").

Notwithstanding the foregoing statutory provision, plaintiff argues that the Government was obligated to follow "accelerated payment methods." While Essex cites 5 C.F.R. § 1315.5, Essex ignores that the provision merely provides that "[a]gencies may pay a small business as quickly as possible, when all proper documentation . . . is received in the payment office and before the payment due date." 5 C.F.R. § 1315.5(b) (emphasis added). Similarly, the FAR provides that "[a]gency heads . . . [m]ay authorize the use of the accelerated payment methods specified at 5 CFR 1315.5." FAR 32.903(a)(5) (emphasis added). Neither of those provisions, however, required DFAS to pay Essex's settlement within seven days. Indeed, Essex's argument is flatly contradicted by its own admission that the Government intended to pay the settlement within nine days of Essex's invoice. See Pl. Opp. at 27.

Finally, Essex argues, in a footnote, that DFARS 232.903 "has no meaning here since Essex is not a 'small disadvantaged business.'" Pl. Opp. at 27 n.3. Essex at once both misses the point and demonstrates that, if anything, the standard 30 day PPA period applied. As explained above, "accelerated payment methods" must be authorized for PPA interest to accrue earlier than 30 days from the invoice date. FAR 32.903(a)(5). However, DFARS 232.903 precludes PPA interest penalties, even where the agency has authorized payment in advance of the 30 day standard PPA payment due date. DFARS 232.906(a)(ii). Indeed, Essex's admission that it is not a "small disadvantaged business" is fatal to its position, because Essex can point to no other

authorization permitting "accelerated payment methods" except for the DFARS 232.903 authorization that applies only to "small disadvantaged business concerns."

Accordingly, even if Count I of Essex's complaint states a claim under the PPA and is not barred by the Settlement Agreement, this Court should dismiss the Complaint to the extent it asserts that interest began accruing prior to August 16, 2006.

## III. Essex Has Not Demonstrated That It Is Entitled To Any Fees Or Expenses

Essex seeks $19,165.50 in professional fees and expenses it allegedly incurred as a consequence of its "effort to resolve the routine payment of a late payment penalty." Pl. Opp. at 30. Essex's claim fails for several salient reasons.

First, legal, accounting, or consulting costs incurred "in connection with" the prosecution of a CDA claim are per se unallowable. FAR 31.205-47. Second, as explained in more detail below, contractors are entitled to such costs – not "in connection with" the prosecution of a CDA claim – only when the they are incurred under the contract. In this case, Essex has provided no evidence that particular professional costs were incurred under its contract that were not "in connection with" the prosecution of a CDA claim. Accordingly, Essex's motion for summary judgment on this issue should be denied.

FAR 31.205-47 provides, in pertinent part, that:

> (a) . . . Costs include, but are not limited to, administrative and clerical expenses; the costs of legal services, whether performed by in-house or private counsel; . . .
>
> (f) Costs not covered elsewhere in this subsection are unallowable if incurred in connection with-- (1) Defense against Federal Government claims or appeals or the prosecution of claims or appeals against the Federal Government.

Accordingly, courts have consistently found that claim preparation costs are not recoverable in an action brought pursuant to the CDA. See, e.g., Singer Co., Librascope Div. v. United States,

568 F.2d 695 (Ct. Cl. 1977) (attorney and technical consultant fees incurred in connection with the preparation and documentation of its claims for equitable adjustment not allowable since such services were not performance-related and bore no beneficial nexus either to contract performance or to contract administration); P.R. Burke Corp. v. United States, 58 Fed. Cl. 549, 558 (2003) (consultant's fees disallowed if those fees are incurred solely to assist in the prosecution of a claim against the Government); Plano Builders Corp. v. United States, 40 Fed. Cl. 635, 639 (1998) (plain meaning of FAR 31.205- 47(f) brings within its scope consulting fees merely associated with or related to the submission of a CDA claim); Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1577 (Fed. Cir. 1995) (request for equitable adjustment qualified as a "claim" within the meaning of the FAR; preparation costs not allowable).

Notwithstanding the foregoing authorities, Essex contends that it is entitled to summary judgment for certain professional service fees and expenses. It is important to note that Essex fails to cite any authority in support of the proposition that it is entitled to such fees in the factual circumstances presented by this case. Cf. SAB Construction, Inc. v. United States, 66 Fed. Cl. 77, 90 (2005) (holding "consultant costs . . . potentially allowable under the contract . . . [w]hen the Contracting Officer makes a change to the contract" that entitles the contractor to an equitable or price adjustment (emphasis added)). In SAB, for example, "the government issued a formal change order," requiring the plaintiff to submit "a cost proposal for certain increases costs associated with the change." Id. at 91. The court agreed that "to the extent the plaintiff's consultant costs were used to estimate liabilities to be included in the REA and were considered by the Contracting Officer in evaluating the REA, they are allowable as contract administration costs pursuant to [FAR] 31.205-33(b)." Id. at 91. The key point, however, is that the contractor in SAB was entitled to contract administration costs only because a change order caused the

contractor to incur such costs under the contract. That is not the case here, where Essex seeks statutory PPA interest for an alleged late payment of a settlement.

Moreover, in support of Essex's motion for summary judgment for certain fees and expenses, Essex relies entirely on a document entitled Plaintiff's Counsel's Statement of Professional Time and Costs, see Pl. App. at 14-16. Even assuming that such a document constitutes sufficient evidence upon which summary judgment might be granted, a point the Government does not concede,[2] Essex's settlement release in this case, discussed above, precludes recovery for any fees or expenses related to the modification. See Pl. App. at 23 (acknowledging that the settlement release at issue bars claims based upon events occurring prior to the date of the release). In that regard, Essex claims costs for various dates between May 18, 2006 and July 19, 2006 – all of which relate to the execution of the settlement modification – and, thus, those costs cannot be recovered. Essex should have bargained for such costs before signing the July 17, 2006 settlement modification; Essex failed to do so and cannot now collect costs related to that modification.

In any event, and assuming that there exists some (as of yet unidentified) legal authority that would entitle Essex to pre-claim professional fees or expenses, the remaining entries in Essex's Statement of Professional Time and Costs lack sufficient specificity and simply are too vague to permit summary judgment in Essex's favor. See 75 Fed. Cl. at 723; 55 Fed. Cl. at 126. There is simply no way for this Court, or defendant, to discern whether the post-modification cost items reflected in that document were incurred for negotiation and contract administration

---

[2] See Travelers Cas. and Sur. Co. of America v. United States, 75 Fed. Cl. 696, 723 (2007) ("calculation of the extra costs attributable to the differing conditions is an issue of material fact that cannot be decided by summary judgment"); Franklin Federal Savings Bank v. United States, 55 Fed. Cl. 108, 126 (2003) ("As for the additional $145,000 to $150,000 of transactional costs claimed by Franklin Financial, the present record contains insufficient evidence to permit the court to enter summary judgment for either side. ")

activities or, instead, were incurred for litigation activities or otherwise "in connection with . . . the prosecution of claims or appeals against the Federal Government." FAR 31.205-47(f)(1).

**CONCLUSION**

For the foregoing reasons, plaintiff's complaint should be dismissed, defendant's motion for summary judgment should be granted, and plaintiff's cross-motion for summary judgment should be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

s/ Matthew H. Solomson
MATTHEW H. SOLOMSON
Trial Attorney, Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-3274
Fax: (202) 514-8624

November 13, 2007

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that, on this 13th day of November 2007, I caused to be filed electronically the foregoing DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND ITS MOTION FOR SUMMARY JUDGMENT, AND DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT with the United States Court of Federal Claims. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Matthew H. Solomson
MATTHEW H. SOLOMSON