IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ESSEX ELECTRO ENGINEERS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-348C |
| | ) | (Judge Bruggink) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S
PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to Rule 56(h)(2) of the Rules of this Court, defendant responds to plaintiff's proposed findings of uncontroverted fact as follows:

1. Fixed price Supply Contract No. F04606-94-D-0401 [Contract-0401] was awarded to Essex Electro Engineers, Inc. [Essex] on September 30, 1994. The Contract was a 100% small business set aside for the production and supply of Generator Sets. Essex completed the Contract in January, 2002. (Complaint, ¶ 6).

   **Response:**

   **Defendant does not dispute this fact.**

2. On June 26, 2000, Essex submitted to the Contracting Officer a certified Contract Disputes Act [CDA] claim on Contract-0401 for an equitable adjustment for Government-caused performance delays to Essex's performance resulting from Government changes. (Complaint, ¶¶ 8 through 17; Def's Proposed Findings, Exh. A, p. 1).

   **Response:**

   **Defendant does not dispute this fact.**

3. For almost six years, the Government asserted that it was unable to address, negotiate or resolve Essex's claim because of the hostilities in Afghanistan and the preparation and conduct of the war in Iraq; and the Government had never disputed Essex's entitlement to the claim. (Complaint, ¶¶ 19 to 20].

**Response:**

**Defendant does not agree that it "ha[s] never disputed Essex's entitlement to the claim." Indeed, the Contracting Officer issued two memoranda to Essex that demonstrate that the Government's initial settlement offer was "made in an attempt to compromise a disputed claim." See April 20, 2006 Memorandum from Contracting Officer to Essex, ¶ 5 (emphasis added); see also May 15, 2006 Memorandum from Contracting Officer to Essex, ¶ 3 (both memoranda attached hereto). Second, the parties understood that no settlement would be finalized until the execution of a contract modification. April 20, 2006 Memorandum at ¶ 2. Finally, the April 20, 2006 memorandum explains that the purpose of the modification would be to release the Government "from any and all liability to the contractor for any outstanding and/or anticipated claims against this contract." Id. (emphasis added).**

4. On May 18, 2006, the Government and Essex agreed to a final settlement of Essex's Contract CDA claim in an amount due of $1,164,832.00, plus accrued interest since June 26, 2000. (Complaint, ¶ 21; Def's Proposed Findings, Exh. A, p. 1). Both the Contracting Officer and Essex confirmed the Date of settlement (May 18, 2006), with

payment required within a reasonable time or the agreement would be enforceable as a stipulation of entitlement and quantum. (Def's Exh. A; Append. pp. 1-2).

**Response:**

**Defendant does not agree that any settlement agreement was binding until the July 17, 2007 settlement modification was executed by the parties. Defendant agrees that the Government and Essex agreed in principle to certain settlement terms on May 18, 2006 in the amounts stated above. Defendant further agrees that the parties understood that payment would have to be made "as soon as possible using the Government's best efforts" or "within a reasonable period of time." Defendant, however, notes that while Append. pp. 2 indicates Essex's view that "this agreement will be enforceable as a stipulation of Essex's entitlement and quantum," Essex understood that a final settlement required a contract modification, see Append. pp. 1. Moreover, even according to Essex's May 19, 2006 e-mail, the parties agreed that the Government would make "payment to Essex of $1,164,832.00 plus CDA interest on that amount from June 26, 2000, to and including May 19, 2006." No e-mail on May 19, 2006 mentions Prompt Payment Act interest or any other interest penalty or any specific payment date.**

5. Essex allowed no more than 60 days from May 18, 2006, in order for a funding modification and the payment to occur. (Append. pp. 3-4).

**Response:**

**Defendant agrees that counsel for Essex proposed, on May 31, 2006, that Essex would "allow a period of no more than 60 days from May 18, 2006, in**

**order for the funding modification an payment to occur." The Contracting Officer, however, did not accept Essex's proposal. Def. Mot. at Exhibit A.**

6. The Contracting Officer and higher management were fully aware that under the settlement agreement the funding and payment due date of July 17, 2006, was definite and that the payment must be made by that date. (Append. pp. 5-7).

<u>**Response:**</u>

**Defendant does not agree that any settlement agreement was binding until the July 17, 2007 settlement modification was executed by the parties. Defendant also does not agree that the parties ever negotiated a July 17, 2006 payment due date. Defendant agrees that the contracting officer was aware that Essex insisted that the settlement be finalized and paid by July 17, 2006.**

7. With no explanation other than "holidays" and people "being on leave," it was not until July 17, 2006, that the funding Contract Modification P00007 was issued by the Contracting Officer and signed for the final settlement agreement of May 18, 2006. The Modification directed the payment agency, DFAS, to make the payment "AS SOON AS POSSIBLE". The Modification "changed" Section B of Contract-0401 ["Supplies or Services"] to add Contract Line Item Number [CLIN] 0009, the payment due for the CDA claim, and CLIN 0010, the accrued CDA interest on the amount found due on the CDA claim up to the date of the settlement on May 18, 20006. The Modification included a release of the "Government from any and all liability under this contract for further equitable adjustments or claims attributable to the facts or circumstances giving rise to the claim." (Def.'s Exh. A; Complaint ¶ 22).

**Response:**

**Defendant agrees that Contract Modification P00007 was issued on July 17, 2007; that modification was not simply for "funding" but rather constituted the settlement agreement. Defendant agrees with the remainder of the allegations contained in paragraph 7 to the extent supported by the modification cited, which is the best evidence of its contents; otherwise defendant disagrees with the remainder of the allegations contained in paragraph 7.**

8. On July 17, 2006, Essex submitted its Invoice "B809-CLAIM" for payment of the amounts on CLIN 0009 and CLIN 0010 in Modification P00007, stating that payment was due July 17, 2006, "upon receipt of this invoice." (Complaint ¶ 27; Append. pp. 4-8).

**Response:**

**Defendant does not dispute this fact.**

9. Also, on July 17, 2006, the Contracting Officer issued Contract-0401, Delivery Order 0004 "for Supplies or Services," again specifying CLINs 0009 and 0010 and requiring that DFAS "MUST" pay "as soon as possible..." (Complaint ¶ 23; Append. pp. 9-10).

**Response:**

**Defendant does not dispute that, to effectuate the settlement, defendant issued Form 1155 entitled "ORDER FOR SUPPLIES OR SERVICES." The form speaks for itself, but defendant denies that it actually obtained any additional supplies or services from Essex with the aforementioned form.**

10. Essex's Invoice was recorded by MOCAS [the DFAS electronic payment tracking system] with a "Payment Due" date of July 26, 2006. (Complaint ¶ 31; Append. p. 11).

**<u>Response:</u>**

**Defendant does not dispute this fact.**

11. On August 30, 2006, Essex received the payment of its Invoice for CLINs 0009 and 0010, without any interest beyond the CLIN 0010 accrued interest as of May 18, 2006. (Complaint ¶ 29].

**<u>Response:</u>**

**Defendant does not dispute this fact.**

12. After waiting ten days, on September 11, 2006, Essex submitted its written request/demand under FAR 32.907-1(c)(1) for the late payment interest penalty required to have been paid on August 30, 2006, under FAR 32.907-1(a) and for the additional penalty amount under FAR 32.907-1(c) because of the failure of the Government to pay the late payment interest penalty within ten days. (Complaint ¶ 32; Append. pp. 12-13).

**<u>Response:</u>**

**Defendant does not dispute this fact, but avers that it is immaterial for the purpose of resolving the pending motions.**

13. On December 29, 2006, Essex submitted its CDA claim to the assigned Contracting Officer for the Prompt Payment late payment interest penalty and additional penalty for nonpayment. (Complaint ¶ 38).

**Response:**

**Defendant does not dispute this fact, but avers that it is immaterial for the purpose of resolving the pending motions.**

14. It was not until May 17, 2007, that a new Contracting Officer informed Essex that "[a]fter discussions with legal counsel, the Government's position is that interest is not payable under the Prompt Payment Act (PPA)." (Complaint ¶ 47).

**Response:**

**Plaintiff does not cite any evidence in support this fact. Defendant does not have sufficient information either to confirm or dispute this fact, and avers that it is immaterial for the purpose of resolving the pending motions.**

15. In an effort to amicably resolve the question of interest due in this matter, Essex incurred accrued administration costs for attorney fees and expenses for 63.25 Hours of professional services and expenses of $190.50 in communications and research from and after May 18, 2006, to and including May 17, 2007, when the new Contracting Officer refused to pay the interest claim, although the Contracting Officer never issued a final decision under the CDA. (Complaint ¶¶ 52-54; Append. pp. 14-17).

**Response:**

**Defendant does not have sufficient information either to confirm or dispute this fact.**

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

s/ Matthew H. Solomson
MATTHEW H. SOLOMSON
Trial Attorney, Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-3274
Fax: (202) 514-8624

November 13, 2007

Attorneys for Defendant

**DEPARTMENT OF THE AIR FORCE**
**HEADQUARTERS 542d COMBAT SUSTAINMENT WING (AFMC)**
**ROBINS AIR FORCE BASE GEORGIA**

MEMORANDUM FOR Essex Electro Engineers Inc
Attn: Mr. F. J. Pawlowski
2015 Mitchell Blvd, Suite A
Schaumberg IL 60193-4543

20 Apr 2006

FROM: 742 CBSSS/GBTRKC

SUBJECT: Contract F04606-94-D-0401, Essex Electro Engineers, Inc. Claim for Unabsorbed Overhead

1. The Government has completed review of your claim against F04606-94-D-0401 and delivery orders 0001, 0002, and 0003 thereto. In an effort to effect a complete and final settlement of *all* issues outstanding against the contract, the Government is prepared to make an offer for your consideration. It should be noted that the Government does not have updated information regarding the actual amount of fixed indirect costs in the F04606-95-D-0403 settlement, and we have not recomputed the percentage of variable costs contained in your indirect cost pool. We are willing to re-compute our offer upon receipt of this information. Essex is reminded that the Government has requested an update on more than one occasion and, to the best of the Government's knowledge, these two issues are the only outstanding issues remaining.

2. The Government's offer is conditional based upon understanding and acceptance that **in the event that the parties reach an agreement** on the settlement of this claim, such agreement will constitute full and complete settlement of all outstanding claims against the Government on this contract. The contract modification issued to finalize the settlement will contain appropriate verbiage to reflect that the Government is released from any and all liability to the contractor for any outstanding and/or anticipated claims against this contract.

3. Contingent upon Essex's acceptance of the above, the Government tenders its settlement offer of $587,746.78. The Government recognizes that significant time has passed since the 26 Jun 2000 letter in which Essex provided proper certification of this claim. As such, the contractor is entitled to collect interest at the appropriate rate for the period of time from the date of certification to the date of settlement. This offer is based upon the following:

a. **Application of Eichleay formula** – Based on rulings by the Court of Appeals for the Federal Circuit and the Armed Forces Board of Contract Appeals, the Eichleay formula as set forth in CAM 12-804 must be used in the Government's calculation. The Government's position of $587,746.78 is fundamentally based upon the Eichleay formula, and, therefore, the Eichleay formula is the primary cause of the adjustments made to the claimed costs.

b. **Delay Days** – Based on documentation provided by the PCO at McClellan AFB CA and absent conclusive evidence to the contrary, 662 delay days due to the fault of the Government are included in this calculation.

c. **<u>Allowability of Additional Claimed Cost</u>** – Your claim includes settlement costs. Pursuant to FAR 31.205-47(f), costs to prepare a claim against the Government are not allowable. Therefore, the amount claimed for settlement costs is denied. A more detailed basis for this denial is found in FAR 31 which addresses reasonableness, allocability and allowability.

d. **<u>Profit</u>** –The claimed profit amount has been adjusted for the Government's reduction in base unabsorbed overhead costs.

4. Request you review the Government's offer and provide your response within 10 working days after receipt of this letter. If you have any questions or concerns you may contact the undersigned at (478) 222-3780 or by email at <u>Jane.Hargis@robins.af.mil</u> The Government looks forward to a successful and mutually advantageous resolution of this issue.

5. This offer is made in an attempt to compromise a disputed claim. Neither the offer or any statement in it, any potential or executed Settlement Agreement, its execution, or the performance of any obligations under it, including any payments, nor the fact of the settlement, is intended to be, or shall be understood as, an acknowledgement of responsibility, admission of liability or wrongdoing, or other expression reflecting upon the merits of the dispute by Essex, which liability is expressly denied.

Martha R Hargis

MARTHA R HARGIS
Contracting Officer

**DEPARTMENT OF THE AIR FORCE**
**HEADQUARTERS 542d COMBAT SUSTAINMENT WING (AFMC)**
**ROBINS AIR FORCE BASE GEORGIA**

MEMORANDUM FOR Essex Electro Engineers, Inc. 15 May 2006
Attn: Mr. Frank Pawlowski
2015 Mitchell Blvd, Suite A
Schaumburg, IL 60193

FROM: 742CBSSS/GBTRKC

SUBJECT: Contract F04606-94-D-0401, Claim

1. The Government is in the process of additional fact finding and review of the elements of cost and our calculations in an attempt to resolve the differences between our original settlement offer dated 20 April, 2006 and Essex's proposed settlement offer dated April 21, 2006. Additional information/clarification, as specified below, is required from Essex in order for the Government to complete its review.

a. FY2000 burden pool – Essex claims the amount of $2,934,409.00 as the value of the FY2000 burden pool whereas the data obtained by DCAA indicated a FY2000 burden pool of $2,826,974.00. The Government needs Essex to support the increased FY2000 burden pool shown above.

b. Impact of Settlement on F04606-95-D-0403 claim for breach of contract – Subject claim was settled in the April/May 2003 timeframe. The undersigned WR-ALC PCO is aware of the final settlement value but does not have a breakdown of the elements of costs. We are seeking to obtain this information through attorneys with DCMA-Chicago, Air Force and Department of Justice. If Essex has that information and is willing to provide same, this will expedite the review of allowable costs under the 0401 instant claim.

2. One of the most critical areas of discrepancy resides in the calculation of delay days. It is the Government's desire that the parties reach a mutual agreement on the number of delay days and, after this agreement, the Government will use the additional information from above to develop a revised negotiation position. The Government's position on delay days is based on the following:

a. In paragraph A.7 of the Claim Summary attached to the 25 May 2000 Claim letter (page 3 of the Claim Summary), Essex states "The current contract completion extension period to May 31, 2000, as acknowledged in the Government's Modifications, defines the period of suspension, delay and disruption totaling 1011 days." It should be noted that the Government has never concurred to this allegation of 1011 days delay; this number was used by the auditor because it was the number Essex had alleged and entitlement had not been determined.

b. The Government's documentation of delay days is as follows:

(1) The original due date for this production unit was 24 Dec 95. Modifications P00002 and P00003 were issued and subsequently the first article acceptance occurred on 26 Jun 97. The contract called for the first production units to be delivered 120 days after the first article acceptance which was 25 Oct 96. The first unit was delivered on 5 Apr 98. This was a contractor caused delinquent delivery based on the fact that certain parts had not been received and, consequently, units had not been completed. The contractor delay was also due to the fact that validated/verified technical orders had not been completed and it was a contractual requirement that these tech orders be shipped with each unit delivered.

(2) Based on the above, the total delay was 825 days; of these days, the Government assumes responsibility fo[redacted] (80.2%) but attributes 163 days (19.8%) as the responsibility of Essex.

(3) The 1011 delay days submitted in the original claim is, as you stated, significantly less than the 1611 you are now claiming based on the Government's alleged failure to provide timely acceptances and to furnish GBLs and trucks for shipments. Your original claim and certification included this allegation; however, the additional 600 days have been added since the Government made it's original offer of settlement.. Prior to the Government initiating any settlement action Essex was asked if there were any updates to be provided and you advised there was not. Based on the original claim, you have also been requested to provide necessary documentation to support Essex's attempts to obtain acceptance, GBLs and trucks as well as the Government's failure to provide same. As of this date, you have failed to support that part of your allegation. Thus we are unable to allow compensation for alleged but unsupported delays nor can we understand the addition of 600 days not previously claimed. Request Essex provide clear and adequate documentation to support the alleged delay awaiting transportation, GBLs and acceptance, the specific dates of requests and to whom these requests were directed and also that Essex provide an accounting of the 600 day increase.

Based on the info in the above paragraphs, the Government is unable to understand Essex's rationale for not accepting the 662 days for which the Government accepts responsibility..

3. The Government is seeking to obtain the information set forth in paragraph 1; however, if Essex can provide this information it will expedite our continued evaluation. Additionally, and as a basis for reaching a final settlement, if Essex can provide documentation to support a number of delay days beyond the 662 and up to the original claim amount of 1011 days as outlined in paragraph 2, the Government is willing to review that information for validity and subsequent negotiation. Any claim beyond the 1011 days in the original claim is denied based on timeliness. If you have any questions concerning this letter, request you contact the undersigned at 478 222-3780 or by email to Jane.Hargis@robins.af.mil

MARTHA R HARGIS
Contracting Officer