IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ESSEX ELECTRO ENGINEERS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-348C |
| | ) | (Judge E. Bruggink) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION**
**TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

November 18, 2007

Charles E. Raley
Counsel for Plaintiff
54 Governors Road
Hilton Head Island, SC 29928
Tel: 843-363-6634
Fax. 843-363-6635

# TABLE OF CONTENTS

Page

I. Defendant's Opposition Highlights The Questions Before The Court..........................1

II. The Settlement Agreement..........................................................................................2

III. The Contract, The Settlement, And Subsequent Events...............................................3

IV. Professional Fees And Expenses.................................................................................6

V. CONCLUSION..............................................................................................................8

# TABLE OF CITATIONS

Page

I. **CASES**

*Bill Strong Enterprises, Inc. v. Shannon*,
49 F.3d 1541 (Fed.Cir. 1995),
*overruled in part on other grounds*....................7

*Boers v. United States*,
44 Fed.Cl. 725 (1999 )....................6, n. 3

*F. Alderete Gen. Contractors, Inc. v. United States*,
715 F.2d 1476 (Fed.Cir. 1983)....................6, n. 3

*FDL Technologies, Inc. v. United States*,
967 F.2d 1578 (Fed.Cir. 1992)....................3, n.1; 6, n.3

*Franklin Federal Savings Bank v. United States*,
55 Fed.Cl. 108 (2003)....................6, n. 3

*Gutz v. United States*,
45 Fed.Cl. 291 (1999)....................3, n.1; 6, n.3

*Information Systems and Networks Corp. v. United States*,
68 Fed.Cl. 336 (2005).................... 6, n. 3

*King v. Department of the Navy*,
130 F.3d 1031 (Fed.Cir. 1997)....................6, n. 3

*Liberty Mut. Ins. Co. v. United States*,
70 Fed.Cl. 37 (2006)....................6, n. 3

*Neal & Co., Inc.*,
1990 WL 34712 (DOTCAB, Jan. 5, 1990)....................6,

n.3

*P.R. Burke Corp. v. United States*,
58 Fed.Cl. 549, 558 (2003)....................................................................................7

*Plano Builders Corp. v. United States*,
40 Fed.Cl. 635, 646 (1998)....................................................................................7

*Reflectone Inc. v. Dalton*,
60 F.3d 1572, 1579 (Fed.Cir. 1995)......................................................................7

*SAB Construction, Inc. v. United States*,
66 Fed.Cl. 77 (2005)..............................................................................................7

*Singer Corp., Librascope Div. v. United States*,
568 F.2d 695 (Ct.Cl. 1977)............................................................................. 7, n.
4

*Stone Forest Industries, Inc. v. United States*,
973 F.2d 1548 (Fed.Cir. 1992), *reh'g den.* (1993)............................................3, n.1

*Travelers Cas. & Sur. Co. Of America v. United States*,
75 Fed.Cl. 696 (2007).........................................................................................6,
n.3

*W&F Building Maintenance Co. v. United States*,
56 Fed.Cl. 62 (2003)........................................................................................6, n.
3

**II. <u>STATUTES AND REGULATIONS</u>**

(1) 31 U.S.C. CHAPTER 39 "PROMPT PAYMENT"

§ 3902. Interest penalties (c).................................................................................4

(2) CODE OF FEDERAL REGULATIONS, PROMPT PAYMENT,
5 CFR §1315

.5 Accelerated Payment Methods.........................................................................5

.10 Late Payment Interest Penalties (b) ...............................................................5

.11 Additional Penalties... ..........................................................................................5

(3) FEDERAL ACQUISITION REGULATIONS [FAR]

FAR SUBPART 32.9 -- PROMPT PAYMENT...........................................................5

32.903 -- Responsibilities (a)(3) & (5)......................................................................5

32.908 -- Contract Clauses (c)(2).............................................................................5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ESSEX ELECTRO ENGINEERS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-348C |
| | ) | (Judge E. Bruggink) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## I. Defendant's Opposition Highlights The Questions Before The Court

In order to accept the Defendant's Opposition, it would be necessary for the Court to hold that:

A. A final settlement agreement on a supply contract on May 18, 2006, of "equitable adjustments or claims" dated May 25, 2000, for delays to performance caused by contract changes, bars a subsequent Contract Disputes Act [CDA] claim for penalties even though that CDA claim is required by the Prompt Payment Act [PPA] because of the Government's late final payment.

B. The late final payment for performance delays resulting from changes on a supply contract is not subject to the PPA.

C. The Government may withhold the final payment on a supply contract for an indefinite period with impunity without the penalties imposed by the PPA.

D. The Government may breach an agreement to make a final payment on a supply contract by a specific date, as affirmed by the Contracting Officer, without causing of PPA penalties to apply or CDA interest to accrue.

E. Professional fees resulting from efforts to achieve an administrative settlement of PPA mandated penalties are not allowable even if they occur before preparation and submission of a CDA claim that is specified in the PPA.

## II. <u>The Settlement Agreement</u>

At first blush, Defendant's argument that the "parties contemplated that Essex would be paid only the sum it received on August 30, 2006, and nothing more" [Def's Opp. p 3], raises the question of how long would the Defendant have Essex to wait until the required final contract payment was made. Was the Government free to wait 1 month, 2 months, 1 year? There is no excuse for the Government's late payment and none has been offered by the Defendant..

The explicit subject of the settlement was the "equitable adjustments or claims attributable to the facts or circumstances giving rise to the claim" dated May 25, 2000, certainly did not anticipate the Defendant's subsequent late payment by violating Contracting Officer's confirmation of the settlement and affirmation that: "**[W]E ARE AWARE OF THE JULY 17, 2006, SETTLEMENT PAYMENT DATE AND HAVE MADE SURE THE APPROPRIATE MANAGEMENT IS AWARE.**" [Append. p. 6; emphasis supplied].

The Plaintiff and Defendant agree that there is "no dispute regarding the terms of the settlement agreement." [Def's Opp. p. 4]. The flaw in the Defendant's Opposition is the argument that the settlement of facts or circumstances resulting in the supply contract claim dated May 25, 2000, and the settlement payment date of July 17, 2006, encompasses the independent penalties established by the PPA for the Government's subsequent violation of its settlement payment obligation. Defendant has not offered a single precedent for its position that a late final payment for

Government changes on a supply contract is not subject to the PPA[1]

**III. The Contract, The Settlement, And Subsequent Events**[2]

Defendant agrees that the underlying Contract is a supply contract. [Def's Resp. to Plaintiff's Proposed Fact Findings, ¶ 1]. Defendant agrees that the subject of the claim and its settlement was compensation for Government-caused performance delays resulting from Government changes to the supply contract. [Def's Resp. to Plaintiff's Proposed Fact Findings, ¶ 2]. Defendant agrees that Essex's compensation claim was not disputed for almost six years, but contends that the claim was then "disputed" merely because the Contracting Officer used the word "disputed" in correspondence intended to finally settle that very claim [Def's Resp. to Plaintiff's Proposed Fact Findings, ¶ 3; Plaintiff's Supp. to its Proposed Facts, ¶ 16, and Supp. to Append., pp. 18-29]. Defendant engages in some rather bizarre interpretations of the settlement of May 18, 2006, and its confirmations by both parties in an effort to avoid the plain meaning of the Contracting Officer's affirmation: **"WE ARE**

---

[1]Defendant argues that *FDL Technologies v. United States*, 967 F.2d 1578 (Fed.Cir. 1992), [which involved payment of EAJA fees having no applicability to the PPA], somehow determines the applicability of the PPA here to the late final payment on Essex's supply Contract. (Def's Opp. p, 8, n. 1). *FDL* did not involve a supply or service contract payment and, thus, is inapposite to *Stone Forest Industries, Inc. v. United States*, 973 F.2d 1548 (Fed.Cir. 1992), which specifically involved a service contract that the Court found would have invoked the PPA, but preceded the effective date of the Act. Defendant's reliance on *Gutz v. United States*, 45 Fed.Cl. 291 (1999), is similarly misplaced in that *Gutz* was an EAJA payment case involving agricultural price supports.

[2]Plaintiff notes that Defendant filed a Motion to Dismiss and for Summary Judgment necessarily based on there being no issue of fact, yet its Opposition and Reply to Plaintiff's Proposed Fact Statement seeks to "dispute" or "not agree" or limit agreement with those facts without offering any evidence to support its positions. Defendant cannot have it both ways; either there is no factual dispute or Defendant has no right to a dismissal or to summary judgment. In addition, offering matter outside the pleadings, defeats Defendant's Rule 12 Motion and requires its consideration as a Motion for Summary Judgment under RCFC Rule 56. Plaintiff believes that this matter should be resolved by sustaining its Cross-Motion for Summary Judgment based on the facts and authorities therein.

**AWARE OF THE JULY 17, 2006, SETTLEMENT PAYMENT DATE AND HAVE MADE SURE THE APPROPRIATE MANAGEMENT IS AWARE.”** [Compare Def's Opp., pp. 3-7, and Resp. to Plaintiff's Proposed Fact Findings Fact, ¶¶ 4–6, with Append., pp. 1–7].

Having settled the final payment due for Government ordered changes to performance of the supply contract with the settlement expressly limited to the “facts or circumstances giving rise to the claim...dated 25 May 2000 and certified 26 June 2000" and with a “settlement payment date of July 17, 2006,” affirmed by the Contracting Officer and appropriate management, the Defendant did not make the required payment on the settlement payment date. [Def's Exh. A. p. 2; Plaintiff's Append. p. 6]. What are the consequences? On the one hand the late payment of a final contract settlement action is subject to automatic interest penalties under the PPA [FAR 52.232-25, 31 U.S.C. § 3902]. On the other hand, a failure to pay on the settlement payment date is a breach of the settlement agreement, thereby initiating the accrual of CDA interest from the payment date as reserved by Plaintiff [Plaintiff's Append. P. 5]. There is simply no known authority and none has been cited by the Defendant by which the Defendant may ignore the agreed settlement payment date of final compensation on a supply contract without facing the penalty consequences under the PPA or the interest consequences under the CDA.

In another attempt to avoid the consequences of disregarding the confirmed “July 17, 2006, settlement payment date,” Defendant repeats its previous argument that the DFARS 232.903 place a restriction on the Code of Federal Regulations and the Federal Acquisition Regulations. [Def's Opposition to Plaintiff's Cross-Motion, pp. 9-10]. Defendant's argument is patently erroneous. First, the DFARS [“Defense Federal Acquisition Regulation Supplements”] merely supplement, but do not restrict or limit the lawfully enacted Code of Federal Regulations and Federal Acquisition

Regulations. Second, "accelerated" payment procedures for a small business are specifically authorized by the Code of Federal Regulations, Prompt Payment, 5 CFR § 1315.5 & .11, and the Federal Acquisition Regulations, Subpart 32.9 – Prompt Payment, 32.903(a)(3) & (5) and 32.908(c)(2). The settlement here included the provision that the "Settlement Payment Date" was "July 17, 2007" and Essex preserved its right to further interest if the Government did not meet that date. [Append., pp. 5-6]. The Defendant's DFARS argument is irrelevant because Essex is not a small disadvantaged business, and that does not negate to Code of Federal Regulations and the Federal Acquisition Regulations or Essex's rights here.

After the Government breached the settlement payment date, in what was hoped to be the most expeditious and inexpensive method of resolving the Defendant's consequences for the late payment, Essex's professional representative devoted 52.5 hours, 112 facsimile transmissions, and 87 telephone and e-mail contacts, including the additional penalty demand specified in the PPA, during the period from the settlement on May 18, 2006, to October 2, 2006, in the effort to administratively resolve the matter through PPA procedures. [Append. pp. 12-16; 31 U.S.C. § 3902 (c) & 5 CFR § 1315.11]. The Defendant ignored these efforts. Essex's representative then prepared and on December 29, 2006, submitted the CDA claim that is before this Court and which benefitted the Government by cutting off the compounding PPA interest [5 CFR §1315.10(b)]. It was not until May 17, 2007, that the Government's new Contracting Officer responded, but rather than enter discussions or issue a Final Decision, he merely stated that the Government's position was that "interest is not payable." [Complaint ¶ 47; Plaintiff's Supplemental Append., p. 30]. Thus, Essex made every effort to amicably avoid this litigation that has been forced by the Defendant's refusal to accept the consequences of its failure to honor the settlement payment date.

The Defendant has offered no authority for its opposition to either PPA penalties for the failure to pay on the confirmed settlement payment date of July 17, 2007, or the CDA interest for the Government's breach of the confirmed settlement payment date of July 17, 2007.[3]

Unless the Court is prepared to hold that a Government failure to honor a settlement payment date on a supply contract as confirmed by the Contracting Officer for the United States has no consequences, then summary judgment for Plaintiff under Count I or Count II must be entered.

## IV. <u>Professional Fees And Expenses</u>

Defendant makes a disingenuous argument that it cannot "discern whether" and "does not have sufficient information to confirm" the administrative professional fees by Essex. [Def's Opposition pp. 12-13, Def's Response to Plaintiff's Proposed Findings of Uncontroverted Fact, ¶ 15]. Plaintiff's professional's e-mails, facsimile transmissions, and correspondence are in the Government's possession. How can Defendant claim that it cannot determine the facts, particularly when it was afforded 120 days to discern and confirm those facts after service of the Complaint?

---

[3]No such authority was offered in its Motions nor its Opposition. [*Cf.*, Plaintiff's Opposition, p. 18 & n. 2]. Also, no authority may be found in Defendant's Opposition to Plaintiff's Cross-Motion: *Boers v. United States*, 44 Fed.Cl. 725 (1999 ) [Dairy Indemnity Program Payments for milk dumping]; *F. Alderete Gen. Contractors, Inc. v. United States*, 715 F.2d 1476 (Fed.Cir. 1983) [Bid Protest injunction]; *FDL Technologies, Inc. v. United States*, 967 F.2d 1578 (Fed.Cir. 1992) [EAJA fees]; *Franklin Federal Savings Bank v. United States*, 55 Fed.Cl. 108 (2003) [Disputed facts preclude summary judgment]; *Gutz v. United States*, 45 Fed.Cl. 291 (1999) [Agricultural Commodity Price Supports]; *Information Systems and Networks Corp. v. United States*, 68 Fed.Cl.. 336 (2005) [Interpretation of ambiguous settlement agreement]; *King v. Department of the Navy*, 130 F.3d 1031 (Fed.Cir. 1997) [Settlement agreement to purge personnel files]; *Liberty Mut. Ins. Co. v. United States*, 70 Fed.Cl. 37 (2006) [Miller Act and Surety Subrogation]; *Neal & Co., Inc.*, 1990 WL 34712 (DOTCAB, Jan. 5, 1990) [Preceded PPA]; *Travelers Cas. & Sur. Co. Of America v. United States*, 75 Fed.Cl. 696 (2007) [Different site conditions delay, disputed facts preclude summary judgment]; *W&F Building Maintenance Co. v. United States*, 56 Fed.Cl. 62 (2003) [Elements of a valid accord and satisfaction, no involvement of PPA or CDA]. Citing inapposite cases does not support an ineffective argument.

On this subject, Defendant's Opposition departs from its generally inapposite citations.[4] In addition to *Bill Strong Enterprises, Inc. v. Shannon*, 49 F.3d 1541 (Fed.Cir. 1995, and *Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed.Cir. 1995) [See, Plaintiff's Opposition and Cross-Motion, pp. 28-29], the Defendant's citations demonstrate that there can be no question regarding the allowability of Essex's professional fees and expenses. *P.R. Burke Corp. v. United States*, 58 Fed.Cl. 549, 558 (2003), establishes that the allowability of professional fees is a an issue of fact and they would be unallowable if they were "solely to assist in the prosecution of a claim." *Plano Builders Corp. v. United States*, 40 Fed.Cl. 635, 646 (1998), did "not raise, and hence the court need not address, a situation where a contractor employs a consultant's work product during good faith negotiations before filing a CDA claim and then, after the negotiations fail, relies upon that same work to show entitlement either at the time it submits a CDA claim or thereafter. In such a clase the consulting services not only would form a basis for and support a DCA claim, but also would facilitate pre-claim negotiations that potentially could have prevented the necessity of ever filing a CDA claim." *SAB Construction, Inc. v. United States*, 66 Fed.Cl. 77, 90-94 (2005), holding that the allowability of professional fees and costs depends upon "three distinct categories": "(1) costs incurred in connection with the work performance of a contract; (2) costs incurred in connection with the administration of a contract; and (3) costs incurred in connection with the prosecution of a [Contract Disputes Act...claim...Costs incurred in connection with the prosecution of a CDA claim are per se unallowable."

While there may be some issue regarding the $3,263.00 in professional fees and expenses after

[4]Except for Defendant's citation of *Singer Corp., Librascope Div. v. United States*, 568 F.2d 695 (Ct.Cl. 1977), which adds nothing since it pre-dates all of the dispositive cases regarding the professional fees and expense allowability question.

Octoberr, 2006 [although Defendant has offered no evidence to oppose the recovery of those fees and expenses], there is no issue regarding the $15,902.50 in professional fees and expenses in the effort to administratively resolve the matter under PPA procedures before the CDA claim was prepared and submitted.

## V. CONCLUSION

Consequently, under the facts, statutes, regulations, and precedent, Essex is entitled to summary judgment –

A. On Count I, for PPA penalties and continuing interest to December 29, 2006, in the amount of $13,692.71, plus interest on the amount found due from Essex's CDA claim dated December 29, 2006, to payment; or

B. On Count II, for CDA interest from May 18, 2006, to August 30, 2006, in the amount of $18,479.57, for the Defendant's violation of the settlement payment date of July 17, 2006, plus interest on the amount found due from Essex's CDA claim dated December 29, 2006; and

C. On Count III, the allowable professional fees and expenses in the amount of $19,165.50 for services in seeking an amicable resolution of Essex's PPA or CDA rights without proceeding with the prosecution of a claim against the Government until May 17, 2007, when the Government refused to discuss the matter.

Respectfully submitted,

/s/ Charles E. Raley

Charles E. Raley
Counsel for Plaintiff
54 Governors Road
Hilton Head Island, SC 29928

Tel: 843-363-6634
Fax. 843-363-6635

Certificate of Service

I hereby certify that on this the 18th day of November, 2007, the foregoing Plaintiff's Reply Opposition to Plaintiff's Cross-Motion for Summary Judgment were electronically filed with the Court. I understand that notice of this filing will be sent to Defendant by operation of the Court's ECF System, which may be accessed through the System.

/s/ Charles E. Raley
Charles E. Raley