IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ESSEX ELECTRO ENGINEERS, INC., Plaintiff, v. THE UNITED STATES, Defendant. | ) | No. 07-348C (Judge E. Bruggink) |

**PLAINTIFF'S SUPPLEMENT TO ITS PROPOSED FINDINGS OF UNCONTROVERTED FACT**

16. On April 20, 2006, five (5) years and 330 days after Essex's initial "claim against" Fixed price Supply Contract No. F04606-94-D-0401 [Contract-0401], the Contracting Officer made a "settlement offer," but also alleged for the first time that the claim was "disputed." [Defendant's fact Response, ¶ 3]. One day later, on April 21, 2006, Essex responded by pointing out that the Contracting Officer's letter ignored the facts, but failed to provide any basis for the settlement position taken. Essex required a resolution no later than May 15, 2006. [Append. p. 18].

17. On May 15, 2006, the Contracting Officer responded with a request for additional information, without any mention that the claim was disputed. [Defendant's fact Response, ¶ 3]. One day later, on May 16, 2006, Essex responded by pointing out that the conservative date for the commencement of the six-year statute of limitations on the claim required a definitive settlement on or before May 19, 2006, at least in the form of a stipulation, or the "Complaint must be transmitted to the Court of Federal Claims to assure timely filing." Essex concluded by noting that "if the Government is finally prepared to resolve this matter, the time to do so is now." [Append. pp. 25–29]. Essex and the Government negotiated by telephone on May 18, 2006, and confirmed the settlement agreement and the settlement payment date of July 17, 2006. [Complaint ¶ 21, Append.

pp. 1-7]..

18. On May 17, 2007, a new Contracting Officer informed Essex that "[a]fter discussions with legal counsel, the Government's position is that interest is not payable under the Prompt Payment Act (PPA)." Essex requested advice as to whether that information was "to be considered a Final Decision. No reply was made to Essex's request (Complaint ¶ 47, Append. p. 30).

Respectfully submitted,

/s/ Charles E. Raley
Charles E. Raley
Counsel for Plaintiff
54 Governors Road
Hilton Head Island, SC 29928
Tel: 843-363-6634
Fax. 843-363-6635

Certificate of Service

I hereby certify that on the 18 th day of November, 2007, the foregoing Plaintiff's Supplement To Its Proposed Findings of Uncontroverted Fact and related Appendix Supplement were electronically filed with the Court. I understand that notice of this filing will be sent to Defendant by operation of the Court's ECF System, which may be accessed through the System.

/s/ Charles E. Raley
Charles E. Raley

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ESSEX ELECTRO ENGINEERS, INC., Plaintiff, | ) | |
| v. | ) | No. 07-348C (Judge E. Bruggink) |
| THE UNITED STATES, Defendant. | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION**
**TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

# APPENDIX SUPPLEMENT

# TABLE OF CONTENTS

Page

1. April 21, 2006, letter from Essex To the Contracting Officer..................................18-24

2. May 16, 2006: letter from Essex's Counsel to the Contracting Officer.....................25-29

3. May 17, 2007: E-mails between Essex's Counsel and a new Contracting Officer.......30

Systems ■ Components ■ Assemblies

# eee

ESSEX ELECTRO ENGINEERS, INC.

April 21, 2006

Ms. Martha R. Hargis
Contracting Officer
542 ATSG/GBTRKC
Headqtrs, 542d Combat Sustainment Wing (AFMC)
Robins AFB, GA 31098-1611

**BY FEDERAL EXPRESS**
**& E-MAIL Jane. Hargis@robins.af.mil**

**REF: Contract No. F04606-94-D-0401, Claim**

Dear Ms. Hargis:

Not only does your letter of April 20, 2006, ignore the fact evidence in this matter but it fails to provide any basis for the position taken.

a. **Contract Sales/Billings**: $12,775,524. Many years ago, we provided DCAA with the information that established the Contract Sales/Billings amount. (*Cf.*, our letter of July 10, 2002).

b. **Total Sales/Billings**: $48,669,294 [9/30/94 – 1/21/02] . (See a., above).

c. **Burden**: $16,598,515 [9/30/04 – 1/21/02]. (See a., above, and our letter of October 17, 2001]. We have no idea what you mean by updated information about fixed indirect costs. By our above referenced letter of July 10, 2002, we provided you with our fixed burden costs for the applicable performance period as confirmed by DCAA.

d. **Application of the *Eichleay* Formula**: We have long agreed to the application of the *Eichleay* Formula. [Cf., our letter of October 17, 2001].

e.. **Delay Days**: The fact record establishes and the Government has acknowledged responsibility for 1,011 days of delay due to the change orders and orders to hold the start of production deliveries and 600 days of delay due to the failure to provide timely

acceptances and to furnish GBLs and trucks for shipments. Your suggestion of 662 days of delay has no basis in reality or the evidence. Even if one were to accept your suggestion, the result is not consistent with your "offer", as follows:

$$\frac{\$12{,}775{,}524}{48{,}669{,}294} \times 16{,}598{,}515 \times \frac{662}{2{,}670} = \$1{,}080{,}288$$

We also note that, even based on flawed credit and variable burden suggestions, DCAA found that the delay damages were no less than $1,487,181 [DCAA Report 6/17/02].

f. **Settlement Expenses**: You have failed to recognize the controlling decision in *Bill Strong Enterprises v. Shannon*, 49 F.3d 1541 (Fed. Cir. 1995), and its subsequent decisions and the fact that at no time has the Government disputed our right to recover damages for the Government's delays on this Contract.

g. **Profit**: The profit rate of 13.7% was established by the Contracting Officer in resolving the escalation claim for these same Government caused delays.

Based on the foregoing, we are willing to compromise the delay days on the basis of splitting the difference between your offer of 662 days and the fact record establishing 1,611 days of Government-caused delays and the start date for the accrual of interest. The result based on the *Eichleay* Formula is the following:

$$\frac{\$12{,}775{,}524}{48{,}669{,}294} \times 16{,}598{,}515 \times \frac{1{,}137}{2{,}670} = \$1{,}855{,}419$$

| | |
|---|---|
| PROFIT (Gov. Accepted: Material Escalation Settle) 13.7%: | 254,192 |
| Subtotal: | $ 2,109,611 |
| SETTLEMENT COSTS (Est. thru 04/20/06): | 80,000 |
| Subtotal: | $ 2,189,611 |
| CREDIT: C.O. unilateral delay allowance, DCAA accepted: | ( 358,200) |
| Subtotal: | $ 1,831,411 |

Plus CDA Interest from 06/26/00 to Payment

Enclosed is a stipulated settlement that we and the Government have used in prior claims and would resolve this matter and allow time for the Government to fund the final payment. It must be signed with the modification and payment then issued no later than May 15, 2006.

Very truly yours,

[Signed]

F. J. Pawlowski
Chairman & Chief Executive Officer

ESSEX ELECTRO ENGINEERS, INC.

cc: Ms. Veronica J. Harris by FAX (478) 222-2255
CIV 542 ATSG/GBTRK

Enclosure

STIPULATION

WHEREAS Essex Electro Engineers, Inc. ["Essex"], of Schaumburg, IL, submitted a certified Contract Disputes Act Claim ["Claim"] to the Air Force Contracting Officer ["United States"] on June 26, 2000, for its increased costs on Contract No. F04606-94-D-0401 ["Contract"] arising from Government-caused delays and the disruption and standby resulting therefrom.

WHEREAS the parties have negotiated and agreed to stipulations leading to a complete settlement of the Claim.

NOW THEREFORE, the parties, Essex and the United States, hereby stipulate and agree as follows:

1. On September 30, 2004 [1994], the United States awarded the Contract to Essex to provide electric generator sets.

2. The Contract was completed by Essex on January 21, 2002. The original Contract completion date was August 24, 1997.

3. As a consequence of Contract delay and disruption caused by the United States based on the unabsorbed burden determined by the *Eichleay* formula and administrative and legal costs accrued in the effort to settle this Claim, as well as profit on the delay costs, less any credits that may be due the United States, Essex is entitled to the sum of $ 1,831,411, as the total amount due on its Claim plus interest as provided under the Contract Disputes Act from June 26, 2000, to the date such sum is paid.

4. In the event that a final Contract modification and full payment of the said sum plus interest has not been made within a reasonable period no later than May 15, 2006, the parties hereto do hereby stipulate to the entry of this agreement as a final decision or judgment by a Board of Contract Appeals or Court of competent jurisdiction in this matter establishing that Essex is entitled

to be paid the said sum as the amount due on its Claim, plus the interest as stated. Further, such stipulated decision or judgment shall be without recourse by either party and all rights of appeal therefrom are hereby forever waived and released.

5. Upon payment in full of the amount due, plus interest, under Paragraph 3, above, or the entry and payment of a final decision or judgment thereon under Paragraph 4, above, Essex releases, waives, and abandons all claims against the United States, its political subdivisions, its officers, agents, or employees, arising out of or related to the Contract or otherwise involved in the Contract, regardless of whether they were included in the Claim, including, but not limited to, all claims for costs, expenses, attorney fees, compensatory damages, and exemplary damages.

6. By executing this Stipulation, the United States releases, waives, and abandons all claims against Essex, its officers, agents, or employees, arising out of or related to the Contract or otherwise involved in the Contract, regardless of whether they were included in the Claim, including, but not limited to, all claims for costs, expenses, attorney fees, compensatory damages, and exemplary damages.

7. This Stipulation is in no way related to or concerned with income or other taxes for which Essex is now liable or may become liable in the future as a result of this Stipulation or as a result of entry of a final decision or a final judgment or satisfaction and payment of the terms herein.

8. Except with respect to the provisions of Paragraph 4, above, Essex warrants and represents that no claim, action or suit with respect to the Contract or its Claim against the United States under, or relating to the Contract, is pending against the United States or will be filed in or submitted to any other court, administrative agency or board, or legislative body, including, but not limited to the General Accountability Office.

9. Essex further warrants and represents that it has made no assignment or transfer of all or any part of its rights arising out of or relating to the Claim involving the Contract. Should there be now, or in the future, any violation of these warranties and representations, Essex shall promptly refund all monies paid herein to the United States together with interest thereon at the rate provided in 41 U.S.C. §611 and computed from the date the United States made payment to Essex.

10. This Stipulation is for the purposes of settling the Claim and permitting a final Contract modification and payment or the entry of a final decision or judgment and payment, and for no other purpose. Accordingly, this Stipulation shall not bind the parties, nor shall it be cited or otherwise referred to, in any other proceedings, whether judicial or administrative in nature, in which the parties or their counsel have or may acquire an interest, except as may be necessary to effect the terms of this Stipulation.

11. The parties hereto and those signing this Stipulation below warrant and represent that they have full authority to enter into this Stipulation and sign it on behalf of the party for which signature is made and that any and all approvals or grants of authority have been obtained and granted so as to permit this Stipulation to be fully binding on the United States.

12. This stipulated agreement is a stipulation of fact leading to the funding of a Contract Modification by the Contracting Officer or the entry of a decision or judgment by a Board or Court of competent jurisdiction and, as such, is not an obligation within the meaning of the Antideficiency Act, Title 31 U.S.C. Sec. 1341.

13. This document constitutes a complete integration of the stipulation between the parties and supersedes any and all prior oral or written representations, understandings, or agreements among or between them.

Date:_____________________

_____________________
Martha R. Hargis
Contracting Officer for the
United States of America

Date: April 21, 2006

[Signed]
Frank J. Pawlowski
Chairman and CEO
Essex Electro Engineers, Inc.

# FAX TRANSMISSION

**Law Office of**
**CHARLES E. RALEY**
54 Governors Road
Hilton Head Island, SC 29928
843-363-6634
Fax: 843-363-6635
E-mail: craley@islc.net

| | | | |
|---|---|---|---|
| **To:** | Ms. Martha R. Hargis<br>Contracting Officer | **Date:** | May 16, 2006 |
| **Fax #:** | 478-926-6950 | **Pages:** | 5, including this cover sheet. |
| **Phone #:** | 478-222-3780 | | |
| **Subject:** | 0401 Claim | | |
| **From:** | Charles Raley | **Matter:** | Response |

The information contained in the following facsimile is attorney-client privileged and confidential and intended only for the use of the individual or entity named. If the reader of the message is not the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone, and return the original message to us at the above address via the U.S. Postal Service.

**COMMENTS:**

**URGENT**

Enclosed is a copy of Essex's response to your e-mail Memorandum of May 15, 2006. This response was also e-mailed to you today.

cc: Ms. Veronica J. Harris
CIV 542 ATSG/GBTRK

May 16, 2006

Ms. Martha R. Hargis
Contracting Officer
542 ATSG/GBTRKC
Headqtrs, 542d Combat Sustainment Wing (AFMC)
Robins AFB, GA 31098-1611

**E-MAIL Jane. Hargis@robins.af.mil**
**& FAX: (478)926-6950**

**REF: Contract No. F04606-94-D-0401, Claim**

Dear Ms. Hargis:

In the interest of time, Essex has authorized me to provide this response to your e-mail Memorandum of May 15, 2006.

First, as the Government knows, there is a six-year statute of limitations on claims against the Government. While the commencement date for the six years may be subject to some interpretive decisions, it is clear that with the claim dated May 25, 2000, the most conservative date by which a complaint should be filed is May 25, 2006. This means that unless a definitive settlement is executed on or before the close of business on May 19, 2006 [at least in the form of the Stipulation sent to you on April 21, 2006], the Complaint must then be transmitted to the Court of Federal Claims to assure timely filing.

Concerning the "information/clarification" matters listed in your Memorandum, we first note that this is one of many times that the Government has sought to rehash matters that have been fully addressed on several occasions during the previous years. Specifically, we call your attention to the following:

1.a. FY2000 Burden Pool $2,934,409: The error in the second DCAA report was specifically brought to your attention in Essex's letter of July 10, 2002. Further, Essex's Financial Statement for FY2000, which has been in the Government's [DCAA] possession since at least October, 2001, clearly records $2,934,409. Also, DCAA Report No. 3141-2002A17500006, November 1, 2002, page 4, confirms the total FY2000 Burden Pool of $2,934,409.[1]

---

[1] The Report's comments regarding executive compensation are inapplicable to this Contract awarded September 30, 1994.

Ms. Martha R. Hargis
May 16, 2006
Page 2

1.b. The Stipulated Judgment on Contract-0403: The detailed breakdown of the amount paid was provided to your substitute, Ms. Kim McDonald, by e-mail dated April 7, 2005, and is repeated as follows:

No Adjustment is due for Unabsorbed Burden recovered on Contract-0403:

| | | |
|---|---|---|
| -0403 Period: 9/22/95–12/27/95 [T4C] Settled: | | $195,000 |
| -Omitted Amounts in the TCO's Decision of Feb. 23, 2001, included in the settlement: | | |
| Direct Labor: | $ 52,800 | |
| Protest Expenses: | 38,738 | |
| Subtotal: | $ 91,538 | |
| Actual Burden Rate: [63.115%]: | 57,774 | |
| Subtotal: | $149,312 | |
| Profit | 14,931 | |
| Subtotal: | $ 164,243 | |
| Interest [Claim to Payment: 18.73%] | 30,757 | |
| Total: | $ 195,000 | ( 195,000) |
| Unabsorbed Burden: | | -0- |

2.a. The standard for the delay days in an adjustment for unabsorbed burden under the *Eichleay* formula is the number of days by which **contract completion** has been extended. [*Cf., All State Boiler*, etc.]. Completion of the last Order 0003 under the original Contract schedule was August 24, 1997. Contract Modification P00002 imposed technical changes causing delays before first article production could begin. [Modification P00002 also incorporated changes to the Contract Manual Specification that made the Military manual specification an alternative to the Commercial manual specification. The Government then used that change to impose a mandatory requirement in May 1997 for a Military specification manual rather than the Contract specified Commercial manual]. Contract Modification P00003 imposed additional technical changes causing delays to completing First Article testing. Contract Modification P00004, which authorized the acquisition of some limited long lead components for production units, also recognized the Modification P00003 delays to First Article testing. In May, 1997, as stated, the Government imposed the alternative Military manual specification as a mandatory requirement rather than the Contract specified Commercial manual. The Government failed to timely approve the First Article, but when approval was finally issued, that "**satisfied all requisites to proceed with delivery of hardware to be furnished under the contract**" [SOW, Para. 3.3.1.3]. The Government imposed multiple revisions to Essex's Commercial manual based on the imposition of the Military specification. The Government violated SOW, Para. 3.3.1.3, by halting production deliveries in December, 1997, and failed to complete its manual verification approval until April, 1998, when Contract Modification P00005 was signed. Pursuant to Modification P00005, Order Modifications 000106, 000204, and 000302, recognized all previous delays and incorporated May 31, 2000, as the Contract Completion date; this is a total delay of 1,011 days from the original completion date of August 24, 1997. Further, by Modifications

000108, 000206, and 000303, the Government provided the price adjustment of $558,369.01 to Essex for its total material escalation due to the "Government caused delay" to production deliveries on Orders 0001, 0002, and 0003. The DCAA's Reports based its quantum determinations on 1,011 days of delay as established by the foregoing Contract Modifications. All of this documentation, along with the Contracting Officer's contemporaneous statements acknowledging the Government's delays, has long been in the Government's Contract records and was further highlighted to you by Essex's claim of May 25, 2000, Essex's letter of July 10, 2002, and the package of documentation submitted to you on June 15, 2005.

2.b.(1) Your assertions regarding the delivery start date are irrelevant to the required standard of the extended Contract completion date to define the delay days under *Eichleay*, discussed above. It is obvious that a delay of 1,011 days occurred from the originally scheduled completion date of August 24, 1997, to May 31, 2000, as defined by the multiple Contract Modifications recognizing the Government's delays. Your reference to "5 Apr 98" was not first article completion, but was delivery of the First Articles for Government compatibility testing after completion of Essex's First Article testing, which had been delayed by the Government's P00003 technical changes as acknowledged by Modifications P00004, P00005, and the related Order Modifications, and the Government's responsibility for all material escalation caused by the delays as recognized in Modifications 000108, 000206, and 000103. Your assertion that "certain parts had not been received and, consequently, [first article] units had not been completed" is nothing more than a bald, unsupportable prevarication. Regarding your assertions concerning the manual, Essex reserved its rights to recover for all delays due to Modification P00002, which included the incorporation of alternative Military manual specification provisions. The Government's subsequent imposition of those alternative provisions as a mandatory requirement was the direct proximate cause for the Government's subsequent technical manual delays. In any event, the Government's bar to production deliveries was a direct violation of SOW. Para. 3.3.1.3. In addition, the Contract only called for Essex to supply one paper copy of a technical manual and nothing in the Contract required or imposed any responsibility on Essex for manuals being included with FOB Origin shipments of production units.

2.b.(2) It is again noted that at no time during the previous almost six years has the Government ever asserted that Essex had any responsibility for the delays on this Contract. Your "attribution" of delay to Essex now has no support in the documentary record and is rejected.

2.b.(3) There is no question that completion of production deliveries on this Contract was delayed 600 days beyond the extended completion date incorporated in Modification P00005 issued before the deliveries were permitted to start. You recognize that the claim of May 25, 2000, and "certification included this allegation" of Government responsibility for the production delivery delays, but you assert that "the additional 600 days have been added since the

Government made its original offer of settlement." This assertion can only be the product of the Government failing to review its own records [*Cf.*, the package submitted on June 15, 2005, detailing the 600 day production delivery delay and resulting total *Eichleay* claim, as such updated information had been requested by your letter of June 7, 2005]. The first Government "offer of settlement" was made April 20, 2006. That June, 2005, package also contained a complete "accounting of the 600 day increase" as your Memorandum of May 15, 2006, says is desired by the Government. We note that the failure of the Government to timely perform acceptances and to furnish GBLs and trucks for shipments was a clear breach of the explicit terms of this FOB Origin Contract and prevented Essex from making deliveries and from receiving payments.

Based on the foregoing documented records and our previous submissions and resubmissions of specific identifications of those records, we fail to understand the Government's suggestion that 662 days represents a fair and equitable offer to settle the 1,611 days of Government delays on this Contract. We also note that Essex's submission and Stipulation of April 21, 2006, represented a compromise reduction of 79% of the 600 days of Government delays during production deliveries.

3. As discussed in detail above and in previous submissions to you, DCAA, and other Government representatives during the years since May, 25, 2000, the Government has always had the information that your Memorandum says it desires to resolve whatever "differences" may truly exist between Essex and the Government. As noted above, if the Government is finally prepared to resolve this matter, the time to do so is now.

Very truly yours,

Charles E. Raley
Counsel for Essex Electro Engineers, Inc.

cc: Mr. Frank J. Pawlowski
CEO, Essex Electro Engineers, Inc.

Ms. Veronica J. Harris by FAX (478) 222-2255
CIV 542 ATSG/GBTRK

**Main Identity - Backup**

**From:** "Charles E. Raley" <craley@islc.net>
**To:** "Miller, Brantley G Civ 742 CBSSS/GBKAA" <Brantley.Miller@robins.af.mil>
**Cc:** "Singleton, Barbara A Civ 742 CBSSS/GBKAA" <Barbara.Singleton@robins.af.mil>
**Sent:** Thursday, May 17, 2007 7:43 PM
**Subject:** Re: Contract/Order #F04606-94-D-0401-0004, CDA Claim

Is this to be considered a Final Decision?

C.E. Raley

----- Original Message -----
**From:** Miller, Brantley G Civ 742 CBSSS/GBKAA
**To:** Charles E. Raley
**Cc:** Singleton, Barbara A Civ 742 CBSSS/GBKAA
**Sent:** Thursday, May 17, 2007 3:07 PM
**Subject:** RE: Contract/Order #F04606-94-D-0401-0004, CDA Claim

Mr. Raley, I apologize for not getting back with you sooner on this issue. After discussions with legal counsel, the Government's position is interest is not payable under the Prompt Payment Act (PPA).

**Brantley (Glenn) Miller**
**Contracting Officer**
**Robins AFB, GA 31098-1638**
**(478) 222-3781**
**DSN 472-3781**
**FAX (478) 926-6950**

---

**From:** Charles E. Raley [mailto:craley@islc.net]
**Sent:** Wednesday, May 16, 2007 4:31 PM
**To:** Singleton, Barbara A Civ 742 CBSSS/GBKAA
**Cc:** Miller, Brantley G Civ 742 CBSSS/GBKAA
**Subject:** Re: Contract/Order #F04606-94-D-0401-0004, CDA Claim

Ms. Singleton:

As you know, the subject claim was submitted to your Agency and was received on December 29, 2006, by Ms. Martha Hargis, the designated Contracting Officer. Thus, under the CDA, a response was required on or before Febuary 27, 2007.

Although Mr. Miller has occasionally advised that "legal counsel" was reviewing the claim and a response would be provided "no later than 29 Mar 07" and we